Submitted on record and brief August 22, affirmed December 19, 2007

In the Matter of the Marriage of

Mark E. LADENDORFF,
*Petitioner-Appellant,*

*and*

Allison S. LADENDORFF,
*Respondent-Respondent.*

Lane County Circuit Court
159506832; A132942

174 P3d 1047

Inge D. Wells filed the brief for appellant. With her on the brief was Wells & Wells.

Respondent waived appearance.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Father appeals a supplemental judgment modifying the parties' dissolution judgment and awarding sole custody of the parties' child to mother. He assigns error to the trial court's determination that awarding custody to mother was in the best interests of the child. He also assigns error to the trial court's refusal to allow an evidentiary hearing on his motion to stay the supplemental judgment pending this appeal. We affirm.

The parties were divorced in 1995. The dissolution judgment awarded the parties joint custody of their then two-year-old son. The judgment provided that father would have primary physical custody of the child, subject to mother's right of reasonable visitation. For the next 10 years, the parties were able to resolve any disputes about parenting time without resort to litigation.

Father moved to Cottage Grove in 1996. Mother began living with her current partner in 1999. They live on a nine-acre property located a short distance from Eugene. Mother does not work outside the home.

Father remarried in 2000, and, since then, he has lived with his current wife and her two children in Cottage Grove. He is self-employed as an aviation consultant. His work requires him to travel out of state extensively.

Since around the time of father's remarriage, the parties maintained a nearly equal parenting arrangement without incident. Shortly after that, however, as the child approached middle-school age, the parties began to disagree about his education. Father wanted the child to attend school in Cottage Grove, while mother wanted the child to attend what she regarded as better schools in Eugene. The relationship between mother and father began to deteriorate. Father became concerned with what he considered to be mother's anger problem. He also was concerned with mother using alcohol and marijuana and believed that mother was too indulgent of the child. At the same time, father's own alcohol consumption became an issue, as did the parties' continuing disagreement about the child's education.

In September 2005, father moved for a modification of the dissolution judgment to award him sole custody of the child, on the ground that the joint custody arrangement was no longer working. Father proposed to significantly decrease the amount of time the child would spend with mother, from a nearly equal parenting schedule to alternate weekends, two weeks in the summer, and alternate major holidays. He further proposed that mother's contacts with the child be otherwise restricted to those necessary to making logistical arrangements; father specifically complained about mother's practice of calling the child simply to check in and talk about how things were going at school. Mother responded that the joint custody arrangement was working and should be continued, but, if custody were to be changed, then she desired sole custody but would retain the established parenting schedule.

After two days of trial, the trial court determined that "each parent is an appropriate, loving parent who is willing and able" to provide the child with a stable and suitable home environment. The court noted, however, that it had concerns about both of them:

> "Mother uses profanity, has a problem with managing her anger, and uses marijuana on an infrequent basis. She is certainly [a] more indulgent parent than father. On the positive side, she has a stable personal life, is able to direct a lot of time to her son, and is very interested in his education. They browse bookstores together, she diligently follows up on his homework assignments, and she has the resources to expose him to travel and museum visits in other cities.

> "Father expresses concerns about Mother's anger and about her drug and alcohol use. However, the record reveals that his own past illicit drug use was extensive and that his present consumption of alcohol worries his son and may be a destabilizing factor in his home. At a time when he is asking the court to drastically cut back on the time that Mother can spend with [the child], Father's present business requires him to travel extensively, often out of state. The testimony of various witnesses shows that Father has always been extremely active in his son's life, involved at school and familiar with his teachers. Father is able to take [the child] on business trips with him and is active in [the child]'s extracurricular activities, particularly sports.

"On many points, the parties have a fairly consistent view of child-rearing. They have been able to work through some genuinely difficult patches, appropriately deciding jointly to seek professional help. However, their disagreement about [the child]'s education has long been a source of friction which has increased as he gets closer to high school age. Father has shown little interest in investigating the opportunities in the Eugene schools and believes the actual choice of school is not particularly important if the child is happy. Mother has been tracking the scores of the schools in Cottage Grove versus the schools in Eugene for several years and believes that there is a significant difference as to the educational experience provided. How much [the child] has been involved in these discussions is not clear but the tug-of-war over the issue is escalating."

The trial court determined that, although each party is a fit parent, the fact that the joint custody arrangement was no longer working required it to determine the best interests of the child in awarding custody to one or the other parent. The court ultimately determined that it was in the best interests of the child for the established parenting schedule to remain in place. Because mother was the only party advocating for that parenting schedule, the trial court entered a judgment modifying the dissolution judgment and awarding sole custody to her. In arriving at that conclusion, the court emphasized the facts that the child has strong emotional ties to both parents, that both parents exhibit love and a strong interest in the child's well-being, and that there is a significant history of relatively equal sharing of parenting responsibilities. The court also noted that father simply had not established that it is desirable to restrict the child's relationship with mother in any way. The court also expressed concern that father "seeks to discard the parenting arrangement that has been in effect for several years, and to drastically reduce Mother's access to the child," contrary to the statutory policy of assuring minor children frequent and continuing contact with both parents. ORS 107.149. In the end, the court noted that mother is the parent more likely to continue to nurture and encourage the child's relationship with both parents.

Approximately one month after its ruling, the trial court entered a supplemental judgment modifying the dissolution judgment by awarding mother custody and ordering

the continuation of the established parenting schedule. Shortly after that, father moved to stay the supplemental judgment pending appeal. Father supported the motion with his own affidavit and with an affidavit of the child to the effect that the child did not want to go to school in Eugene. At the hearing on father's motion, father advised the court that, although nothing in the relevant statutes specifies how such post-judgment motions are to be determined, he would "prefer" to call witnesses. The court declined to hear witnesses and denied father's motion.

On appeal, father first assigns error to the trial court's determination that awarding sole custody to mother was in the best interests of the child. He contends that the trial court failed to give sufficient weight to father's role as the child's primary parent, failed to consider the significance of the parties' disagreement about the child's education, failed to consider the child's preference for father as a custodial parent, and failed to consider the child's strained and ambivalent relationship with mother. Mother has filed no response to father's appeal.

We review a trial court's modification of child custody *de novo*. ORS 19.415(3). A modification of custody is proper only when there has been a change in circumstances. *Francois and Francois*, 179 Or App 165, 168, 39 P3d 265 (2002). Where one party is unwilling to continue a joint custody arrangement—as in this case—a change in circumstances occurs as a matter of law. *Horner and Horner*, 119 Or App 112, 116, 849 P2d 560 (1993).

Once a change in circumstances has been established, the custody of a child is based upon an analysis of the child's best interests. Such analysis requires consideration of six statutory factors. ORS 107.137. We consider each of those factors in turn.

The first factor is the child's emotional ties with other family members. ORS 107.137(1)(a). Father has remarried, and the stepmother has two sons who are close in age to the child. Although mother has not remarried, she has been in a committed relationship for many years with a man who has known the child since he was born. Taking the record as a whole, we agree that all of these relationships appear to be generally positive for the child.

The second factor is the parties' interest in and attitude toward the child. ORS 107.137(1)(b). There appears to be no dispute that both mother and father exhibit love toward the child and have a strong interest in the child's well-being.

The third factor is the desirability of continuing an existing relationship. ORS 107.137(1)(c). In this case, father's proposed modification would greatly reduce the amount of time the child spends with mother. Father's primary justification for such a restriction relates to mother's "problem with anger" and her supposed overindulgence of the child. We agree with the trial court, however, that father simply did not prove that it is desirable to restrict the child's relationship with mother.

The fourth factor is the abuse of one parent by the other. ORS 107.137(1)(d). There appears to be no allegation of any abuse in this case.

The fifth factor is the preference for awarding custody to the primary caregiver. ORS 107.137(1)(e). Father contends that the trial court should have weighed this factor more heavily in his favor because he had been the "de facto custodial parent" since the parties' dissolution in 1995. Based on our review of the record, however, we find that the record is inconclusive about the extent to which either of the parties was the "primary" parent of the child in the first few years following the dissolution. More importantly, we agree with the trial court's determination that, although the dissolution judgment designated father as the primary physical custodian of the child, the parties' parenting time has been nearly equal for the past five or more years.

The sixth factor is the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. ORS 107.137(1)(f). As the trial court noted, father seeks to discard the parenting schedule that has been in effect for many years and greatly reduce the amount of time the child spends with mother. Furthermore, father wishes to restrict mother's communications with the child to those necessary to make logistical arrangements, and he disapproves of her calls made simply to check with the child about how things went at

school that day. Conversely, even if awarded sole custody, mother continues to advocate for equal parenting time. Upon our review of the record, we have some doubt about father's willingness and ability to facilitate a close and continuing relationship between the child and mother. Mother, however, appears very willing to facilitate the child's continuing relationship with father. Therefore, we agree with the trial court's determination that this factor weighs in favor of granting custody to mother.

In short, based upon our review of the record, we find no persuasive reason to disturb the trial court's decision to award sole custody to mother.

■ Father also assigns error to the trial court's refusal to hold an evidentiary hearing on his motion for a supplemental judgment pending appeal. At the outset, it is not entirely clear that father preserved this contention, having merely advised the court that, although the relevant statutes say nothing about holding a hearing, he would "prefer" to offer live testimony. In any event, ORS 107.105(4) provides that, if an appeal is taken from a judgment modifying a dissolution judgment, "the court rendering the judgment may provide in a supplemental judgment for any relief" that it could have granted on a provisional basis before judgment under ORS 107.095 and that the court may further provide "that the relief granted in the judgment is to be in effect only during the pendency of the appeal." Neither ORS 107.095 nor ORS 107.105 requires any special procedure. In particular, neither statute requires that the court take live testimony at a hearing, as opposed to considering affidavits submitted with the motion, as occurred in this case. We reject father's second assignment of error without further discussion.

Affirmed.