Argued and submitted September 4, 2009, affirmed April 14, 2010

In the Matter of the Marriage of

Jessica STEVENS,
nka Jessica Geary,
*Petitioner-Respondent,*

*and*

Brian STEVENS,
*Respondent-Appellant.*

Wasco County Circuit Court
0500046D; A138624

229 P3d 625

Michael B. FitzSimons argued the cause for appellant. With him on the brief was Jaques, Sharp, Sherrerd, FitzSimons & Ostrye.

No appearance for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Father appeals from a supplemental judgment awarding mother sole custody of two children, with parenting time to father. We review *de novo*, ORS 19.415 (2007),[1] giving considerable weight to the trial court's credibility findings, *Talik and Talik*, 226 Or App 67, 72, 202 P3d 267 (2009), and affirm.

This custody dispute involves two children, I and J. The older child, I, was born in 1996 to mother and a man who died during I's infancy. Father and mother became romantically involved in 1998 and began living together in 1999. Father has filled the paternal role for I since then. J, who was born in 1999, is the parties' daughter.

The family moved to The Dalles in February 2001, and father and mother married the following month. Mother was the primary caregiver for the children until the fall of 2004, when she began to attend school in Portland. While in school, mother stayed in Portland during the week for classes. Consequently, father became the primary caregiver for the children. As the relationship between mother and father deteriorated, mother stayed in Portland more of the time.

The parties' marriage ended with a stipulated general judgment of dissolution, entered in April 2005. The judgment provided for joint custody of both J and I; the children were to be with father during the week and mother on the weekends. Mother understood the judgment to describe the way that the parties were caring for the children at that time, but added, "I really thought it was a living, breathing contract that we can change and fix if our schedules changed." For some months after the divorce, the parties continued to attempt reconciliation; during the summer of 2005, they took an almost three-week vacation as a family, and mother lived in the family home for some time.

Mother returned to school in Portland in the fall of 2005 but, in January 2006, did not return to school and found an apartment in The Dalles. The parties split parenting time

---

[1] In 2009, the legislature amended ORS 19.415. Because the notice of appeal in this case was filed before the effective date of the amendments, the amendments do not apply. Or Laws 2009, ch 231, §§ 2, 3.

50-50 in February and March 2006 and then again from May to September 2006. Father ended each attempt at 50-50 parenting time in order to return to the parenting plan set forth in the judgment and attributed his decisions to concerns that mother made negative comments about him to the children and failed to communicate about whether she would pick the children up from school. For her part, mother felt that father "kept reneging on agreements."

In October 2006, mother moved to modify parenting time. She initially proposed that she would have sole custody of I, the parties would have joint custody of J, and the children would alternate weeks with each parent. Ultimately, though, each party sought sole custody of both children.

For various reasons, the modification proceedings were continued on several occasions, and attempts to adjust the parenting time schedule while the proceedings were pending failed. In January 2007, after mediation, the parties tried to evenly divide parenting time, but that arrangement ended after about a month; father testified that the children were not turning in their homework when they were with mother, that their sleep schedules were disrupted, and that mother made negative comments about father to the children. For her part, mother testified that father's changes to the schedule made it difficult for her to remain involved. In July and August 2007, the parties again tried to equally share parenting time. Father ended that arrangement because, he testified, the children were often late for scheduled activities when mother dropped them off, an assertion that mother generally denied. Mother testified that father was uncooperative in establishing a reasonable schedule and that, in late 2006 and early 2007, she arranged her schedule so that she would be able to pick up the children from school, but "the kids were going to daycare and other places when they could have been with me."

Although father was more involved than mother in I's education, mother complained that father kept information from her about I's homework and school and that father made negative comments about her to the children and to school employees. It appears that, although father and mother disagree about the best way to support I's education,

mother does care about it and devotes time to helping him with his homework.

Mother remarried in April 2007. She and her new husband have a daughter, born in July of that year, with whom I and J are close.

During the modification proceedings, the parties participated in a custody evaluation with Dr. Rhiannon, who produced a written report but did not testify. Rhiannon conducted psychological testing with each parent and identified no concerns about either of them. Rhiannon concluded that the children were well bonded to both parents, but that the children "each seem to depend on [father] for their stable, day-to-day care." She recommended that father have sole custody and that mother have parenting time; she further recommended child-focused mediation and possibly family or individual counseling.

Although the trial court found Rhiannon's report to be a generally accurate description of the facts, the court awarded sole custody of both children[2] to mother and parenting time with father. Father appeals, arguing that the trial court erred by awarding custody to mother.

We begin with the applicable legal standards. Where, as here, either party is unwilling to continue a joint custody arrangement, a change of circumstances has occurred as a matter of law, and we determine the custody issue based on the children's best interests, considering the factors set out in ORS 107.137. *Ladendorff and Ladendorff*, 217 Or App 62, 67, 174 P3d 1047 (2007); *see also* ORS 107.169(5) ("Modification of a joint custody order shall require showing of changed circumstances and a showing that the modification is in the best interests of the child such as would support modification of a sole custody order. Inability or unwillingness to continue to cooperate shall constitute a change of circumstances sufficient to modify a joint custody order.").

---

[2] The trial court concluded that, because the custody issue regarding I arose in the context of modification of a stipulated judgment that had provided for joint custody, the only issue was I's best interests. No one has challenged that aspect of the trial court's ruling, and we therefore do not discuss it.

ORS 107.137(1) provides, in part:

"In determining custody of a minor child under ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

In determining the children's best interests, we do not isolate any one factor from the others or from other relevant factors. ORS 107.137(2).

Here, the trial court concluded that most of the factors weighed fairly evenly between the parties, finding that both parents are fit and have close emotional ties with the children, that each parent has strengths and weaknesses, that each has "an exaggerated view" of the other's interpersonal style, and that both parties had "unnecessarily exposed the children to issues in the divorce." The court found that, although father had been the primary parent for the past two years, mother had been the primary parent before that. The court further found that father had "unreasonably interfered with [mother's] parenting time with these children" and that father's interference "was one of the primary reasons" for awarding custody to mother. The court explained that, although being most recently the primary parent weighed slightly in father's favor, father had excluded mother from parenting, and mother was more willing and able to facilitate

and encourage a close relationship between the children and father.

The trial court's conclusions regarding the best interests factors were based on its assessment of evidence that included competing testimony offered by the parties. As we have explained before, we give considerable deference to the implied credibility findings of the trial judge, who had the opportunity to observe the witnesses. *See, e.g.*, *Cooksey and Cooksey*, 203 Or App 157, 172, 125 P3d 57 (2005) (referring, on *de novo* review of a best interests determination in a parent relocation context, to "the well-settled principle that, in reviewing trial court decisions that so often involve considerations of credibility and demeanor, we do so cautiously, reversing only for clearly articulable reasons"). We find that consideration particularly compelling here, where the court had the opportunity to observe mother and father over an extended period of time. Nothing in our review of the record suggests that the trial court erred in its analysis of the children's best interests.

Affirmed.