Argued and submitted August 11; custody award vacated and remanded, otherwise affirmed September 16, 2020

In the Matter of the Marriage of

Carmen Yvonne WANTING,
*Petitioner-Appellant,*
*and*

Derek Jones WANTING,
*Respondent-Respondent.*

Marion County Circuit Court
18DR20756; A171398

475 P3d 127

At mother's Informal Domestic Relations Trial, she presented evidence that she was the primary caregiver of her children. The trial court awarded custody to father and, in doing so, did not account for the statutory primary-caregiver preference under ORS 107.137(1)(e). Mother appeals, assigning error to the court's award of custody to father. She contends that the court failed to properly account for the statutory preference afforded to a primary caregiver. *Held*: The trial court erred in failing to account for the statutory primary-caregiver preference under ORS 107.137(1)(e) as required by *Nice v. Townley*, 248 Or App 616, 274 P3d 227 (2012).

Custody award vacated and remanded; otherwise affirmed.

Mary Mertens James, Judge.

Daemie M. Kim argued the cause for appellant. Also on the brief was Law Office of Daemie M. Kim.

No appearance for respondent.

Before Lagesen, Presiding Judge, and Kamins, Judge, and Kistler, Senior Judge.

LAGESEN, P. J.

Custody award vacated and remanded; otherwise affirmed.

## LAGESEN, P. J.

Mother appeals a general judgment of dissolution entered following an Informal Domestic Relations Trial under Uniform Trial Court Rule (UTCR) 8.120. She assigns error to the trial court's decision to award custody of the couple's two children to father. She argues that the court misapplied ORS 107.137 in making that custody determination and, in particular, failed to properly account for the statutory preference afforded to a primary caregiver in the manner required by our decision in *Nice v. Townley*, 248 Or App 616, 274 P3d 227 (2012). We agree and reverse and remand.

The parties were married in April 2010; mother initiated this dissolution proceeding in September 2018. In the interim, mother gave birth to the couple's two sons, who were seven and three at the time she filed for divorce.

The parties attempted without success to mediate their case. Thereafter, they both agreed to proceed with an "Informal Domestic Relations Trial" under UTCR 8.120. That provision, which was added to the UTCRs in 2017 following a pilot program in Deschutes County,[1] provides for a procedurally relaxed and summary dissolution trial if the parties agree to it by filing a "Trial Process Selection and Waiver for Informal Domestic Relations Trial." UTCR 8.120(2).

Because of the relaxed procedures, a UTCR 8.120 trial differs in some significant ways from the usual trial. For example, only the parties and any expert may testify. *See generally* UTCR 8.120(3). The parties are not subject to cross-examination. UTCR 8.120(3)(d). The court does all questioning even if the parties are represented by counsel: "The party is not questioned by counsel, but may be questioned by the Court to develop evidence required by any statute or rule." UTCR 8.120(3)(c). Only "brief legal argument" is permitted. UTCR 8.120(3)(i). The court must make "best efforts *** to issue prompt judgments," although taking a matter under advisement is allowed if needed. UTCR 8.120(3)(j).

---

[1] *See* William J. Howe III & Jeffrey E. Hall, *Oregon's Informal Domestic Relations Trial: A New Tool to Efficiently and Fairly Manage Family Court Trials*, 55 Fam Ct Rev 70 (2017).

In connection with those requirements, both parties signed UTCR Form 8.120.1. In those signed forms, they acknowledged, among other things, that they were waiving the application of the rules of evidence and agreeing that the court could "determine what weight will be given to documents, physical evidence, and testimony that is entered as evidence during the Informal Domestic Relations Trial process." *See* UTCR Form 8.120.1.

The parties then proceeded to the contemplated informal trial, at which each party sought custody of the couple's children. Inquiring into that issue with mother, the court elicited the following information about the allocation of parenting responsibilities between the two parties:

- Mother had "been a stay-home mom for *** almost the entire time of [the] marriage."

- In September 2017, a year before she filed for divorce, mother started a part-time job in childcare for the YMCA to which she had been permitted to take her own children, something she did most of the time.

- For the past three weeks, the children had been in daycare while mother worked at her new job as a legal assistant.

- Father had watched the children when she had errands to run.

- For the past three months, the couple had been coparenting but, before that, mother "was exclusively the primary caretaker of these children," because father had been employed full time at first, and then became a full-time student, all the while maintaining a side business working on cars.

- While father was enrolled as a student, he did not take care of the children, sometimes leaving before they were up, and returning "to put a blanket over them at night."

- Mother did not question father's ability to coparent their children.

The court also explored the issue of parenting with father, eliciting from him the following information:

- He wanted them to grow up to be good men, with good relationships with their families, including with their mother.

- He had had "to learn how to deal with discipline," in view of his own upbringing.

- He thought he and mother should share parenting time 50-50.

- He disagreed with mother's characterization of his degree of involvement, explaining that he had lots of photographs of the kids, and that, "as of the last year and a half," he had "made it a point to be there when they wake up, and get them out of bed, and make sure they're at the table and eat cereal."

- He also played with them in the evenings and read books to them.

After hearing from both parents, the court said that one concern that it had was that the children remain in the community. Both parents said they did not intend to displace the children from the community. At the close of the hearing, the court determined that it would award custody to father. Although mother had argued in her brief and closing argument that she was entitled to the statutory primary caregiver preference, the court did not address that. Instead, the court explained:

"With respect to custody of the children, the Court finds, based on the testimony, that Father is the more suitable parent for custody. The Court finds that, in part, based on the statutory construct for custody. The Court finds that the Father has a more positive approach towards encouraging a relationship between the children and their mother, that he has the children's best interests in mind and has articulated how he will continue to parent them and to encourage a loving relationship with both parents.

"And I'm not saying at all that Mother doesn't have a loving relationship with her children. That's not what the Court is concluding, but the Court does find that these are difficult cases, but I find that based on all of the evidence

before the Court, that Father has in mind a means and a method and an intent to continue to have a healthy relationship between these boys and both parents. And I find that that provides the Court with a ground—grounds to award custody to Father."

Mother appealed. Pointing to our decision in *Nice*, she contends that the trial court erred when it did not find that she was the primary caregiver and did not account for the statutory primary-caregiver preference under ORS 107.137(1)(e). Father did not appear on appeal.

Before turning to the merits of mother's arguments, we make two observations about the UTCR 8.120 trial process. The first is that, by agreeing to that process, neither party waived the right to appeal. *See generally* UTCR 8.120; *see also* William J. Howe III & Jeffrey E. Hall, *Oregon's Informal Domestic Relations Trial: A New Tool to Efficiently and Fairly Manage Family Court Trials*, 55 Fam Ct Rev 70, 74 (2017). The second is that, by agreeing to the process, neither party waived the right to have the court apply the correct legal standards in deciding the issues presented to it or to have the court make factual findings supported by the evidence presented to it.[2] *See generally* UTCR 8.120. That means that, if a party has preserved a particular legal issue for appeal in the context of an informal dissolution proceeding, we will review the trial court's application of the law just as we would on a review of a judgment resulting from a formal domestic relations trial. Said another way, the statutory constructs governing custody and other necessary decisions that must be made in the course of dissolving a marriage necessarily apply with full force in trials under UTCR 8.120 (unless, of course, the parties agree to some other arrangement).

As for the merits, this case is right in line with *Nice*. There, on a record that, as described in the opinion, is similar to (although more developed than) this one, we vacated and remanded the court's decision to award custody

---

[2] This is not to suggest that ordinary preservation-of-error principles could not result in a party losing the ability to raise a particular legal issue on appeal; it is just to point out that, by agreeing to the informal process, the parties do not by virtue of that fact agree that the court is not bound to follow the law.

to the father where the evidence compelled a finding that the mother had been the parent who took care of the child's basic needs for the majority of his life, up until the beginning of the dissolution proceeding, and where the court's analysis did not take into account the statutory preference for the primary caregiver. *Nice*, 248 Or App at 622-23.

Similar too is *Gomez and Gomez*, 261 Or App 636, 323 P3d 537 (2014). There, we reversed and remanded for reconsideration a decision to award custody to the father where the trial court did not determine which party was entitled to the statutory preference for the primary caregiver and then did not account for that preference in its custody determination. *Id*. at 638. Instead, the court had determined that, at one point or another, each party had been a primary caregiver but it never determined who was entitled to the preference. *Id*. Relying on *Nice*, we held that "the primary caregiver is afforded a statutory preference, and that preference must be properly considered." *Id*.

Here, as in *Nice*, what evidence the court elicited about the parties' caretaking roles compels the finding that mother was the parent who, prior to initiating dissolution proceedings, was responsible for meeting the children's basic needs on a day-to-day basis. Although father's testimony would support a finding that he was much more engaged in the children's lives than mother let on, it would not support a finding that he had been their caregiver before the start of the dissolution proceedings. And, as in *Gomez*, the court never determined which party was entitled to the statutory preference, and never accounted for that preference in its decision. Instead, perhaps because of the informal nature of the proceedings, the court's statements on the record suggest that it did not view the ordinary statutory framework for deciding custody issues as wholly controlling. The court stated that its decision was, "*in part,* based on the statutory construct for custody." (Emphasis added.) But the statutory construct for custody, including the preference for the primary caregiver, fully applied and required the court to account for the statutory preference. *Gomez*, 261 Or App at 638. For that reason, as we did in *Nice* and in *Gomez*, we vacate the custody award. It is not clear to us the extent to which the court's child support determination may have

been based on the custody determination. To the extent the court's decision on remand requires it, the court should reconsider any previous decisions that were based on the prior custody decision.

Custody award vacated and remanded; otherwise affirmed.