Argued and submitted May 26, 2011, vacated and remanded March 14, 2012

In the Matter of the Minor Child of

Brett Anthony NICE,
*Petitioner-Respondent,*

*v.*

Sarah Marie TOWNLEY,
*Respondent-Appellant.*

Lane County Circuit Court
150900294; A144262

274 P3d 227

George W. Kelly argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Mother appeals a general judgment awarding custody of the parties' son, M, to father. She assigns error to (1) the court's award of custody to father, (2) a provision of the parenting plan that provides for an automatic revision of the plan to accommodate changes in father's work schedule, and (3) the court's determination that father is entitled to claim M as a dependent for tax purposes. We write to address the first assignment of error and, as amplified below, vacate and remand the court's award of custody, which obviates the need to consider mother's other assignments of error.

We have the discretion in domestic relations cases to "try the cause anew upon the record or make one or more factual findings anew upon the record." ORS 19.415(3); *see Turner and Muller*, 237 Or App 192, 194-96, 238 P3d 1003 (2010), *rev den*, 350 Or 231 (2011). Mother has requested that we review this case *de novo*, but we are not persuaded that this is an appropriate case for us to do that. *See* ORAP 5.40(8)(c); *Turner*, 237 Or App at 196 (noting that we conduct *de novo* review only in exceptional cases). Hence, we review this case for legal error and state the facts consistently with those found by the trial court to the extent that there is evidence to support them.

Father and mother were in a dating relationship when mother gave birth to M in September 2007, but they never married. Mother has lived her entire life with her parents, and, approximately a month or two before M's birth, father moved out of his parents' home and into mother's grandmother's home, which was on the same property as mother's parents' home. During the first five months of M's life, father spent approximately three to four hours each day with him.

Father moved back into his parents' home in February 2008 before moving into an apartment in a nearby town. Despite those moves, father continued to see M three or four times a week for several hours at a time. In June, the parties ended their dating relationship but agreed to meet at church on Sundays so that father could see M. In the first week of July, father took a job and moved farther away from mother and M. Approximately one week later, father's work

schedule changed, requiring him to work on weekends. As a result, the parties stopped meeting on Sunday and instead met every other week for a couple of hours.

After the parties broke up, father's efforts to contact mother and have more contact with M were unsuccessful. He called mother once a week to arrange meetings and request parenting time. However, mother did not reliably return his calls and messages, and she denied his repeated requests to have M stay with him overnight.

Father's mother planned a September party for M's first birthday. Mother asked that father not attend the party, and father's mother understood that a condition of mother bringing M to the party was that father not be invited. Despite not being invited, father came to the party. In response, mother told father's mother that she needed to tell father to leave or mother would leave the party with M. Within a few minutes of father's arrival, mother took M and left the party.

Father eventually moved back to his parents' home, but he did not see M in October and was able to arrange a time to see him only once in November. Father asked to see M on Christmas, but mother denied that request. She did allow father to see M on New Year's Day.

In January 2009, father filed a petition seeking joint custody of M with mother, if she agreed to that arrangement, or sole custody. After mother was served with father's custody petition, she and her father met with father and his parents. Mother asked that father and his family have no contact with her or M until the petition was resolved.

Father thereafter moved the court to grant him temporary parenting time with M pending resolution of father's custody petition. The court granted the motion after a hearing. The court's order gave father a progressively greater amount of parenting time with M each month, culminating with father having seven days of parenting time each month with M.

The court held a hearing on father's custody petition in July. After hearing testimony, the court concluded that, before it made a final decision on custody, father "should

have more parenting time with [M] * * * so that the Court has more information [on which] to make [its] decision." To that end, it increased father's parenting time so that M would spend three days each week with father and four days with mother.

The court reconvened the custody hearing in October. At that hearing, father testified that M had always lived with mother and that mother had probably been more available to M throughout M's life than father had. Father also testified that mother is the parent who takes M to the doctor, and mother testified that father has never taken M to the doctor or the dentist.

At the conclusion of the hearing, the court stated its intention to award custody of M to father. Over the course of the custody hearings and as reflected in the court's custody award, the court concluded that awarding custody of M to father was in M's best interest. The court determined that each of the factors in ORS 107.137(1) weighed equally in each parent's favor except ORS 107.137(1)(f), *i.e.*, "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[1] The court concluded that, if mother were awarded custody, she would continue to marginalize father's role in M's life, and, as a result, it awarded custody to father. Although the court did not explicitly determine which parent was M's primary caregiver, it did state that, before M's first birthday, mother had been M's primary parent.

Mother appeals, contending that the trial court erred in awarding custody of M to father. Mother's challenge to the court's custody award reduces to an argument that the court erred in its application of ORS 107.137. ORS 107.137(1) provides that, "in determining custody of a minor child * * *, the court shall give primary consideration to the best interests and welfare of the child." A trial court exercises discretion in making a custody award and is in a better position than an appellate court to weigh the factors that enter into

---

[1] We note that the parties never married. Nonetheless, because they have the same rights and responsibilities as married or divorced parents, the trial court was required to consider the factors in ORS 107.137 in awarding custody of M. *See* ORS 109.103 (applying ORS 107.135 and ORS 107.137 to unmarried parents).

that determination. *Cooksey and Cooksey*, 203 Or App 157, 168-69, 125 P3d 57 (2005) (discussing the holding of *Meier and Meier*, 286 Or 437, 446, 595 P2d 474 (1979)).

ORS 107.137 provides the framework under which a court is to determine the custody of a child. It provides, in part:

"(1) * * * [I]n determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

"(e) The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. * * *

"(2) The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors."

Thus, in making a custody determination, a court must consider each of the factors listed in ORS 107.137(1) and may not rely on any one factor to the exclusion of any other factor.

Mother contends that the court erred in its treatment of the factors in ORS 107.137(1). She specifically contends that the evidence in the record compels a finding that she was M's primary caregiver and that the court therefore erred in failing to properly consider the preference in ORS 107.137(1)(e) in favor of granting custody to M's primary caregiver. We agree with mother.

ORS 107.137(1)(e) requires a court making a custody determination to consider "[t]he preference for the primary caregiver of the child, if the caregiver is deemed fit by the court." The court did not directly address that factor. However, its conclusion that all factors other than ORS 107.137(1)(f)—the willingness and ability of each parent to encourage a relationship between the child and the other parent—applied equally to both parents reflects an implicit finding that M did not have a primary caregiver. We conclude that the record does not support that finding.

Generally, the primary caregiver is the party who has provided more care for the child and with whom the child has lived a majority of his or her recent life. *Cf. Boldt and Boldt*, 104 Or App 379, 382, 801 P2d 874 (1990) (mother was primary caregiver because, before parties' separation, she cared for the child almost exclusively while father had little time to provide day-to-day care for the child and, after separation, father had only assumed basic care responsibilities for the child during visitation); *McBrayer v. Randolph*, 191 Or App 553, 557, 562, 83 P3d 936 (2004) (weighing in father's favor the fact that he had been his daughters' primary caretaker for "most of the last decade" even though they had lived exclusively with mother for over a year before the custody hearing).

Which party is the primary caregiver may be determined by considering which party has nurtured the child and has taken care of the child's basic needs, for example by feeding the child, nursing the child when he or she is sick, scheduling daycare and doctor's appointments, and spending time disciplining, counseling, and interacting with the child. *Cf. Holcomb and Holcomb*, 132 Or App 498, 504, 888 P2d 1046, *rev den*, 321 Or 94 (1995); *Tuttle and Tuttle*, 62 Or App 281, 285, 660 P2d 196 (1983); *Derby and Derby*, 31 Or App 803, 805, 571 P2d 562, *modified on other grounds*, 31 Or App 1333, 572 P2d 1080 (1977), *rev den*, 281 Or 323 (1978).

Here, M has lived a majority of his life exclusively with mother. She has been the person with whom he has primarily interacted and who has been responsible for caring for him. Although the court's successive awards of temporary parenting time to father increased the amount of time that M

spent with father before the court's custody ruling, M continued to spend more time in mother's care.

Furthermore, the increased amount of time that M spent with father from January 2009 through the October custody hearing could not have overcome the relatively long history that M has of interacting with mother and having mother provide for his care, for example by solely providing for M's healthcare needs by scheduling and taking him to medical and dental appointments.

In sum, the record does not contain evidence that would support a finding that mother was not or had ceased to be M's primary caregiver. It follows that the trial court failed to properly exercise its discretion in making its custody determination under ORS 107.137 because it failed to properly consider the preference in ORS 107.137(1)(e) in favor of the primary caregiver. *See Olson and Olson,* 218 Or App 1, 16, 178 P3d 272 (2008) ("[A] trial court's * * * award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes."). We therefore vacate the court's custody award and remand for the court to reconsider its decision in light of that.[2]

As noted, mother also assigns error to the court's inclusion of a provision in the parenting plan that automatically adjusts the parenting time schedule whenever father's work schedule changes and to the court's determination that father is entitled to claim M as a dependent for tax purposes. Our determination that the court must reconsider its custody award obviates the need to consider mother's other assignments of error.

Vacated and remanded.

---

[2] There is no antecedent judgment in this case that determined custody of M, so our vacation of the judgment that awarded custody to father means that there will be no extant custody judgment when our appellate judgment issues. Our vacation of the custody judgment implies nothing about the proper disposition of father's custody motion on remand.