Submitted October 1, 2021, vacated and remanded April 27, 2022

Katarina Rose HENRETTY,
*Petitioner-Appellant,*

*v.*

Malcolm D. LEWIS,
*Respondent-Respondent.*

Lane County Circuit Court
20DR01485; A175040

509 P3d 701

Mother appeals a judgment awarding custody of the parties' young son, J, to father. She contends that the trial court erred in making its best-interests determination under ORS 107.137, because it failed to designate a primary caregiver, such that neither party was given the benefit of the statutory preference for the primary caregiver under ORS 107.137(1)(e). Mother further contends that, on this record, she should have been designated as the primary caregiver and given the preference. *Held*: The trial court erred in failing to designate a primary caregiver for purposes of ORS 107.137(1)(e). Further, on this record, the only finding possible is that mother is J's primary caregiver within the meaning of ORS 107.137(1)(e). On remand, the trial court is to reconsider its custody determination, taking into account the primary-caregiver preference under ORS 107.137(1)(e).

Vacated and remanded.

Debra E. Velure, Judge.

George W. Kelly filed the briefs for appellant.

Malcolm D. Lewis filed the brief *pro se.*

Before Mooney, Presiding Judge, and Aoyagi, Judge, and DeVore, Senior Judge.

AOYAGI, J.

Vacated and remanded.

**AOYAGI, J.**

Mother appeals a judgment awarding custody of the parties' young son to father. She contends that the trial court erred in making its best-interests determination under ORS 107.137, because it failed to designate a primary caregiver, such that neither party was given the benefit of the statutory preference for the primary caregiver under ORS 107.137(1)(e). Mother further contends that, on this record, she should have been designated as the primary caregiver and given the preference. Because we agree with mother on both points, we vacate and remand for the trial court to reconsider its custody determination under the correct legal standard, which requires giving mother the primary-caregiver preference under ORS 107.137(1)(e).

On review of a custody judgment, we review the trial court's best-interests determination for abuse of discretion. *See Nice and Townley*, 248 Or App 616, 623, 274 P3d 227 (2012). It is an abuse of discretion to apply an incorrect legal standard. *Olson and Olson*, 218 Or App 1, 16, 178 P3d 272 (2008) ("In order to earn the measure of deference to which discretionary decisions are entitled on appeal, a trial court's [ruling] must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes.").

This case involves custody of the parties' joint child, J. The parties ended their romantic relationship when J was three years old, and, in the same month that J turned four years old, the trial court granted custody of J to father, with parenting time to mother. In making that ruling, the trial court recognized that its decision was governed by ORS 107.137. As relevant here, ORS 107.137(1) identifies six factors that "the court shall consider" in determining a child's best interests for purposes of deciding custody: (a) the emotional ties between the child and other family members; (b) the parties' interest in and attitude toward the child; (c) the desirability of continuing an existing relationship; (d) one parent's abuse of the other parent; (e) "[t]he preference for the primary caregiver of the child, if the caregiver is deemed fit by the court"; and (f) each parent's willingness

and ability to facilitate and encourage a close and continuing relationship between the child and the other parent.

Here, the court concluded that most of the factors were a wash, that is, did not favor either parent. The court first addressed the "primary caregiver" factor, stating:

"I've heard a lot of testimony here about who's the primary caregiver, and I can't place one parent above the other. Somebody saying that [father] was working—you know, to me, that's parenting, and I think that that's something that people overlook, that you don't have food on the table unless there's a paycheck. And, so, I don't discount that.

"And I know that some of these witnesses that I've heard from are—they're—you know, the witnesses are glowing about both of these people, for the most part. So, you know, little digs here and there maybe, but there's nothing here that causes me concern about either of the parents.

"And I just—looking at that factor of who's the primary caregiver, it's even. I can't make a decision based on that factor."

The court then considered the other statutory factors, stating that the "only one that tips the scale for the court" was J's emotional ties with father's family members in California, which favored father in that father had moved back to California after the parties' separation (while mother remained in Oregon). The court later suggested that the sixth factor, regarding each parent encouraging J's relationship with the other parent, might also favor father to a "slight" degree.

Based on the foregoing analysis—and after making clear that it was a difficult decision and that both parents were fit and capable—the court granted "sole legal and physical custody" of J to father, with parenting time to mother. The court memorialized its assessment of the primary caregiver (or what it called "primary parent") factor in its written judgment. It stated that "'working' and providing financial support to [J] was equally important and a factor" in determining J's "primary parent"; that "neither Mother nor Father" were J's "primary parent"; and that that

was so "despite Father's testimony admitting that Mother was the primary parent since arriving in Oregon in March 2019, and despite the fact that Father left Oregon without [J] in January 2020."[1]

We agree with mother that the trial court misapplied the statute in making its custody determination. As established by existing case law and recently reiterated in *Dickson and Schwartz*, 313 Or App 616, 617-18, 494 P3d 377 (2021), designating which party is the child's primary caregiver and giving a preference to that party in deciding custody is mandatory under ORS 107.137(1)(e). Not designating a primary caregiver—or designating both parents as the primary caregiver, which has the same effect—is inconsistent with the statutory preference created by the legislature. *See Dickson*, 313 Or App at 617-18 (citing cases, and holding that it was error under ORS 107.137 for the trial court to designate both parents as the child's primary caregiver). "'[T]he primary caregiver is afforded a statutory preference, and that preference must be properly considered.'" *Id*. at 618 (quoting *Gomez and Gomez*, 261 Or App 636, 638, 323 P3d 537 (2014) (brackets in *Dickson*)). "[A] trial court legally errs when it fails to determine which parent is entitled to the statutory primary caregiver preference and then account for that preference in its custody determination." *Id*.

Accordingly, the trial court misapplied the statute when it failed to identify J's primary caregiver and, relatedly, failed to give that party the statutory preference required by ORS 107.137(1)(e). That is an abuse of discretion. *Nice*, 248 Or App at 623 ("[T]he trial court failed to properly exercise its discretion in making its custody determination under ORS 107.137 because it failed to properly consider the preference in ORS 107.137(1)(e) in favor of the primary caregiver.").

We also agree with mother that, on this record, the only finding possible is that mother, not father, is J's primary caregiver within the meaning of ORS 107.137(1)(e). As

---

[1] The written judgment does not mention the other five factors in ORS 107.137(1). The record shows that the court in fact considered all six factors, however, and neither party argues otherwise.

noted in the judgment, father admitted at trial that mother had been J's primary caregiver since March 2019, when the parties moved to Oregon, which is consistent with the other trial evidence. Thus, at the time of the custody trial in November 2020, when J was 48 months old, mother had been his primary caregiver for at least the past 20 months. *See Nice*, 248 Or App at 622 (generally focusing on the child's "recent life" in assessing which parent is the "primary caregiver").[2]

Constrained by the law and the facts, father does little on appeal to defend the court's finding that he and mother were "even" caregivers, instead focusing on the other statutory factors. But we are not reviewing *de novo*, and neither mother nor father has identified any error by the trial court in making the other findings, so we limit our review to the primary-caregiver factor. Having reviewed the record, we conclude that the only permissible finding from the trial evidence is that mother is J's "primary caregiver" for purposes of ORS 107.137(1)(e) and is therefore entitled to the statutory preference in ORS 107.137(1)(e). *Cf. Dickson*, 313 Or App at 618 ("Much as was the case in *Wanting and Wanting*, 306 Or App 480, 475 P3d 127 (2020), and *Nice v. Townley*, 248 Or App 616, 274 P3d 227 (2012), the evidence compels the finding that mother is the children's primary caregiver as that term has been defined in our case law.").

In reaching that conclusion, we emphasize that the statutory preference is directed to the "primary *caregiver*." ORS 107.137(1)(e) (emphasis added). The act of identifying the "primary caregiver" should not be misconstrued as a judgment on the quality of the other parent's parenting or the other parent's devotion to the child. We cannot fault the trial court for using the term "primary parent" as shorthand for the factor in ORS 107.137(1)(e), as we have done so ourselves. *E.g.*, *Bradburry and Bradburry*, 237 Or App 179,

---

[2] In some cases, changes to the primary caregiver over time—with each parent acting distinctly as the child's primary caregiver for meaningful portions of the child's life—could be relevant in determining which parent is the primary caregiver for purposes of the statutory preference. That is not the case on this record, or at least not to the point that it would allow a finding that father is J's primary caregiver.

190-91, 238 P3d 431 (2020). However, it is important to recognize that the statutory preference is actually, and more accurately, for the "primary caregiver." There are many different ways that parents contribute to their children's well-being, including financially, all of which come within the umbrella of "parenting." For custody purposes, however, ORS 107.137 requires giving a preference to the child's primary *caregiver*.

"[T]he primary caregiver is the party who has provided more care for the child and with whom the child has lived a majority of his or her recent life," which "may be determined by considering which party has nurtured the child and has taken care of the child's basic needs, for example by feeding the child, nursing the child when he or she is sick, scheduling daycare and doctor's appointments, and spending time disciplining, counseling, and interacting with the child." *Nice*, 248 Or App at 622; *see also Wanting*, 306 Or App at 481, 485 (the parent who "was responsible for meeting the children's needs on a day-to-day basis" was their "primary caregiver"). Here, under the applicable legal standard, the evidence allows only one finding, which is that mother is J's primary caregiver for purposes of ORS 107.137(1)(e).

Finally, on this record, the trial court's failure to give mother the statutory preference under ORS 107.137 (1)(e) could have affected its ultimate custody decision. *See Dickson*, 313 Or App at 618 (rejecting an argument that any error in failing to designate one parent as the children's "primary caregiver" was harmless, because we were "not persuaded that proper consideration of the preference has no likelihood of affecting the court's custody decision"). The identity of the primary caregiver "is a significant consideration in deciding custody," even though "it is only one of several relevant considerations and is not itself dispositive." *Robison and Robison*, 124 Or App 479, 482, 863 P2d 478 (1993), *rev den*, 318 Or 350 (1994). The trial court recognized this as a close case regarding custody, and its failure to account for the statutory preference to mother as the primary caregiver could have affected the ultimate custody decision.

We therefore vacate and remand for the trial court to account for mother's entitlement to the primary caregiver preference in determining custody.[3]

Vacated and remanded.

---

[3] As usual, we note that our vacation of the custody decision "'implies nothing' about the proper disposition of the custody issue on remand." *Gomez*, 261 Or App at 638 n 4 (quoting *Nice*, 248 Or App at 623 n 2).