Submitted February 3, vacated and remanded May 17, 2023

Myllisa WRIGHT,
*Petitioner-Appellant,*

*v.*

James LUTZI, Jr.,
*Respondent-Respondent.*

Linn County Circuit Court
16DR03074; A176985

530 P3d 517

Mother appeals a 2021 judgment modifying the parenting time and child support provisions of a 2017 judgment, arguing that the modification judgment does not accurately reflect the trial court's ruling as to the number of overnights that the child is to spend with each parent. *Held*: The modification judgment contains an internal inconsistency as to the number of overnights that the child is to spend with each parent. When a judgment contains an internal inconsistency or otherwise is ambiguous, an appellate court may look to the trial court's oral statements to resolve the ambiguity. In this case, however, the inconsistency in the judgment stems from two inconsistent positions that father took during trial, both of which were included in the judgment, such that the Court of Appeals could not discern from the record which intention would have prevailed had the trial court recognized the inconsistency when it prepared the judgment. Under the circumstances, remand was necessary for the trial court to resolve the inconsistency itself.

Vacated and remanded.

Brendan J. Kane, Judge.

Myllisa Wright filed the brief *pro se.*

No appearance by respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Vacated and remanded.

**AOYAGI, P. J.**

Mother appeals a 2021 judgment modifying the parenting time and child support provisions of a 2017 judgment. Appearing *pro se*, mother argues that the modification judgment does not accurately reflect the trial court's ruling as to the number of overnights that the child is to spend with each parent. Father does not appear on appeal. Upon review of the record, we conclude that there is an internal inconsistency in the modification judgment as to the number of overnights that the child is to spend with each parent, which appears to be the result of the trial court adopting father's proposed parenting-time plan, which itself contained an internal inconsistency. Under the circumstances, we vacate and remand.

Mother and father have one joint child, J, who was born in 2011. In January 2017, the trial court entered a judgment regarding custody, parenting time, and child support, based on an agreement of the parties. The parties were awarded joint legal custody of J. Regarding parenting time, father's home was designated as J's primary residence, and mother was awarded parenting time three times per month from "Thursday night through and including Sunday night," which was "to commence at 7:00 p.m. Thursdays and end Monday mornings" when mother dropped off J at school or at 9:00 a.m. on nonschool Mondays.

In 2018, father fell on hard times, and the parties agreed that J should live primarily with mother, at least for a time. In 2021, mother moved to modify the 2017 judgment to reflect J's actual living arrangements. At that time, J was living primarily with mother, and father had parenting time every other weekend.

The modification trial took place on August 30, 2021, with both parties appearing *pro se*. Mother argued that the court should modify the judgment to formalize the status quo, including giving father parenting time with J two weekends per month. Father agreed that J should continue to spend more time with mother than him (as had been the case since 2018) but requested that he be given more than two weekends per month. Father stated that he would like to "switch it around" and make it "the opposite"

of how it was in the 2017 judgment—which he described (inaccurately) as giving him "four days a week" and mother "three days a week"[1]—such that J would spend four days a week with mother and three days a week with him. Father suggested that he could pick up J "from school on Thursday after school and take her to school Friday, have her for the weekend, bring her to school on Monday, and then Mom pick her up from school on Monday [afternoon]." A few minutes later, father reiterated that he really wanted to have J "three days a week," as that would be great for him and would result in J having "four days a week" with mother, which was "more time" with mother like mother wanted.

The court ruled from the bench. It concluded that mother had proved a change of circumstances so as to allow a modification. It changed legal custody to father, after analyzing the statutory factors related to custody. The court then stated that mother's home "will be the primary residence" for J, explaining, "That's the residence that [J]'s known for the last three years. The court's not going to change that." As for parenting time, the court stated that "the ideal provision is usually a 50/50 split," but that it was "not going to order that" because "[father] didn't even request that. [Father] requested three days a week." Father interjected that he would also like "week on/week off during the summer." The court then stated, "Week on/week off during the summer, and so the court is going to adopt that proposed parenting time schedule as in the best interest of [J] to have maximum time with both parents * * *."

The court drafted the judgment itself. The judgment, titled "Supplemental Judgment Modifying a Domestic Relations Judgment," was entered the same day. In the "Custody and Parenting Time" section of the judgment, the court handwrote:

"Respondent to pick up [J] at Lebanon Police Station at 5:00 p.m. every Thursday, and return child to either school

---

[1] As previously described, the 2017 judgment did not give mother "three days a week." It gave her four overnights at a time (running from Thursday evening to Monday morning) three times a month. That *averages* to a little less than three overnights per week, but only because mother had parenting time in three designated weeks of each month, not every week.

or mother at Lebanon P.D. in Monday a.m. Summer: 1 week with Respondent next with Petitioner; alternate winter breaks and spring breaks and holidays according to Linn County Model Parenting Plan, attached."

The court also terminated mother's child support obligation and ordered father to pay $100 per month as child support. Several exhibits were attached to and incorporated into the judgment, including Exhibit 3, which is a "Child Support Worksheet" and related "Parenting Time Worksheet" showing exactly how child support was calculated. Both the Child Support Worksheet (page 3) and the Parenting Time Worksheet list mother as having 202 overnights and father as having 163 overnights per year, which is consistent with J being with mother "four days a week" and with father "three days a week."

Later the same day, August 30, mother filed a letter with the court, stating that she believed that the "parenting plan was written incorrectly." She made several points, including, as relevant here, that it had been "agreed" that J would be with mother "more than" father but that "the paperwork" showed father having J from Thursday to Monday, which would mean that J was with father more than mother. Father did not respond, and, per a notation on the docket, "no action" was taken on mother's letter.

Mother appeals the modification judgment. In her sole assignment of error, she argues that the parenting-time provision is inconsistent with the trial court's oral ruling and with other aspects of the judgment. The court clearly stated in its oral ruling that it intended for mother's home to be J's primary residence and for J to be with father less than half the time, specifically three days per week in the school year and alternating weeks in summer, as father had requested. And, in the judgment, the court expressly provided that mother's home is J's primary residence and calculated child support based on mother having 202 overnights and father having 163 overnights. Yet, the court ordered a specific parenting-time schedule that actually gave father *four* overnights and mother *three* overnights per week in the school year, which, with alternating summer weeks and holidays, works out to father having 202 overnights and mother

having 163 overnights—seemingly the exact opposite of what the court intended.[2]

"Generally, when a written judgment and oral ruling conflict, the trial court's decision is governed by the signed order, regardless of the evidence of the judge's contrary intent." *State v. Rood*, 129 Or App 422, 425-26, 879 P2d 886 (1994). That is at least in part because "[a] judge may change his mind concerning the proper disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter." *State v. Swain/Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974). Thus, even if a judgment conflicts with the oral ruling, that is typically not a basis for reversal on appeal, if the judgment is unambiguous.

If a judgment is ambiguous, however, we may look to the court's oral statements to resolve the ambiguity. *State v. Sullivan*, 29 Or App 55, 58, 562 P2d 560 (1977) (looking to the court's oral comments to resolve an ambiguity in its written order as to a particular credibility finding). We may do the same to resolve an internal inconsistency in a judgment. *Rood*, 129 Or App at 426 (where "an obvious clerical error" causes a judgment to be "internally inconsistent and ambiguous on its face," "we may look at the record to determine the court's true intent and instruct the trial court to modify the [judgment] accordingly"); *State v. Cardwell*, 48 Or App 93, 97, 615 P2d 1198 (1980) (looking to the record "to determine the trial court's real intent," where its written order was "ambiguous and internally inconsistent" as to the disposition of certain counts). We have also vacated and remanded judgments for correction where the record reveals an obvious clerical error, even if the judgment itself is unambiguous. *E.g.*, *State v. D. Z.*, 274 Or App 77, 80, 359 P3d 1246 (2015)

---

[2] Mother takes issue with which parent is supposed to get 202 overnights and which parent is supposed to get 163 overnights, but she does not contest that 202 and 163 are otherwise the correct numbers for the time split that the trial court had in mind. A simple calculation suggests that those numbers are correct. If one presumes that there are 14 weeks of summer, breaks, and holidays in a typical school year, then a parent who has a child four overnights per week in the school year and half of the summer, breaks, and holidays would have the child for exactly 202 overnights, while a parent who has a child three overnights per week in the school year and half of the summer, breaks, and holidays would have the child for exactly 163 overnights.

(vacating and remanding an order of civil commitment for correction, where it was apparent from the record that the court had checked the wrong box on the form regarding the basis for the commitment); *State v. Selmer*, 231 Or App 31, 33-35, 217 P3d 1092 (2009), *rev den*, 347 Or 608 (2010) (vacating and remanding for entry of a corrected judgment, where the judgment misstated the crime of conviction).

In this case, the trial court did not make an obvious clerical error in reducing its decision to a written judgment. The parenting-time provision in the judgment reflects the schedule that father orally suggested during trial, so it is clearly intentional, not a scrivener's error. The judgment is internally inconsistent, however, in that it designates mother's home as J's primary residence and calculates child support based on mother having four overnights per week during the school year (202 overnights per year total) and more time overall than father, but the parenting-time provision gives mother only three overnights per week during the school year (163 overnights per year total) and less time overall than father.

We cannot resolve the internal inconsistency in the judgment by reference to the court's oral statements, because it is apparent from the record that the inconsistency originates in father's own inconsistent proposals, all of which the court adopted, presumably without realizing their inconsistency. Father acknowledged at trial that mother's home should be J's primary residence and that mother should have "more" parenting time than him, and he stated twice that he wanted J with him "three days a week" and with mother "four days a week." Nonetheless, father proposed specific pick-up and drop-off times that gave him four overnights and mother three overnights per week. To the extent that father's references to "switching around" the 2017 schedule and imposing "the opposite" of that schedule were intended as a request that he have four overnights only three times a month, *see* 326 Or App at 31 n 1, he was not clear on that point, and that is not how the trial court understood his request.

We presume that father did not realize that he was making inconsistent requests regarding parenting time and that, in adopting what it understood to be father's proposal,

the trial court did not realize that it was being inconsistent. Mother brought the inconsistency to the court's attention the same day that the judgment was entered, but the court took no action.[3] We are therefore left with an internally inconsistent judgment that cannot be corrected by looking to the record for evidence of the court's "true" or "real" intent. The record shows that, due to an unrealized day-counting error, the trial court simultaneously held two inconsistent intentions, each of which is reflected in different provisions of the written judgment: (1) to make mother's home J's primary residence and to have J spend four days with mother and three days with father each week during the school year, and (2) to give father parenting time from Thursday after school until Monday morning, which is four overnights. There is simply no way for us to resolve that inconsistency, because it is impossible on this record to know which intention would have given way to the other had the trial court realized the inconsistency in its judgment.

Under the circumstances, we vacate and remand for further proceedings to address the inconsistency. *Cf. State v. Foss-Vigil*, 304 Or App 267, 276-77, 467 P3d 38, *rev den*, 367 Or 290 (2020) (vacating and remanding "in light of the inconsistency in the judgment," where the trial court ordered two conflicting dispositions by checking both of two boxes intended as alternatives); *Breece v. Amsberry*, 279 Or App 648, 650-51, 381 P3d 1086 (2016) (vacating and remanding for clarification, where a judgment was ambiguous as to the basis for dismissal); *State v. Leen*, 113 Or App 595, 596, 832 P2d 49 (1992) (stating that, on remand, the trial court could "establish what it intended" by an "ambiguous" probation term in the reversed judgment).

Vacated and remanded.

---

[3] We do not infer anything from the trial court taking "no action" on mother's post-judgment letter, as there could be any number of reasons to take "no action" on a letter from a *pro se* party. As for preservation, mother did not need to do more than she did under the circumstances. During the hearing, each parent advocated for his or her own parenting-time preferences; mother had no legal basis to object to father's arguments. It was not apparent until the judgment was entered that the judgment would contain an inconsistency. *See Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) ("In some circumstances, the preservation requirement gives way entirely, as when a party has no practical ability to raise an issue.").