No. 672     July 30, 2025     229

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Robert Lee WEAVER,
*Petitioner-Respondent,*
*and*

Holly Lee BUTLER,
aka Holly Lee Weaver,
*Respondent-Appellant.*

Lane County Circuit Court
18DR07654; A182287

Charles M. Zennaché, Judge.

Argued and submitted April 10, 2025.

Amy D. Fassler argued the cause for appellant. Also on the briefs was Schulte, Anderson, Downes, Aronson & Bittner, P.C.

George W. Kelly argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Mother and father married in 2012 and divorced in 2018. At the time of dissolution, they agreed to joint legal custody of their two children, C and J, with a 50/50 parenting plan. In 2022, mother moved for sole legal custody and a change to the parenting plan, citing a communication breakdown with father. Father cross-moved for sole legal custody and sought to keep the 50/50 parenting plan. After a two-day trial, the court awarded custody to father and kept the 50/50 parenting plan. Mother appeals the resulting supplemental judgment. In her sole assignment of error, she argues that the trial court failed to give proper consideration to the statutory preference for the primary caregiver in making its custody determination. As described below, we conclude that the court properly considered the statutory preference and, accordingly, affirm.

When the trial court makes a custody determination for a minor child in connection with marital dissolution, whether initially under ORS 107.105 or in a later modification proceeding under ORS 107.135, "the court shall give primary consideration to the best interests and welfare of the child."[1] ORS 107.137(1). The court "shall consider" six factors in deciding what custody arrangement is in the child's best interests:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   *The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court*; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between

---

[1] "A modification of custody is proper only when there has been a change in circumstances. Where one party is unwilling to continue a joint custody arrangement—as in this case—a change in circumstances occurs as a matter of law." *Ladendorff and Ladendorff*, 217 Or App 62, 67, 174 P3d 1047 (2007) (internal citation omitted).

the other parent and the child. However, the court may not consider such willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in a pattern of behavior of abuse against the parent or a child and that a continuing relationship with the other parent will endanger the health or safety of either parent or the child."

*Id.* (emphasis added).

In this case, the trial court determined that it was in the children's best interests for father to have legal custody. The court made findings and explained its reasoning.[2] It began by noting that it was a very difficult decision which parent should have legal custody, because the parties were "two really dedicated, caring, considerate, smart parents who are motivated by doing what they think is [in] their children's best interest." It then addressed the six factors. As relevant to the first and third factors, the court found that the children are emotionally tied to both parents and their families and that those ties are important to the children and worthy of continuation. As relevant to the second factor, the court identified some concerning things that each parent had done at times, but it ultimately found that both parents are "very interested in their children"; are "trying to do the best they can"; have "gone out of their way to make modifications in their lives that are kid centered"; and have "strived to do what's in their children's best interests," such as father agreeing to the children attending a school that was a better fit for them, even though it was farther from his house, and mother advocating for individualized education plans for both children. The court found the fourth factor, abuse, to be inapplicable.

As to the fifth factor, the court found that both parents were fit and stated that, in terms of caregiving, there was "not much of a difference here, if any difference at all," between them, given that they had been splitting time 50/50 for five years and that both parents were actively involved

---

[2] Mother has not requested *de novo* review, and we do not provide it. *See* ORS 19.415(3)(b) (permitting discretionary *de novo* review in equitable cases); ORAP 5.40(8)(c) (limiting *de novo* review to "exceptional" cases). We therefore state the facts in accordance with the trial court's express and implied factual findings that are supported by the record. *Gilbride v. Smith*, 328 Or App 565, 566, 537 P3d 961 (2023).

in making decisions for the children. However, the court recognized that it was required to designate a primary caregiver. *See Henretty v. Lewis*, 319 Or App 345, 348, 509 P3d 701 (2022) ("[D]esignating which party is the child's primary caregiver and giving a preference to that party in deciding custody is mandatory under ORS 107.137(1)(e)."). The court decided that mother was the primary caregiver, albeit "just barely" and "mostly" as an "artifact" of the pre-dissolution family dynamic, based on mother having taken the lead on "probably a few more [things] than [father] has." Because it was such a close call, the court indicated that it would not give the primary caregiver factor much weight: "So while that factor does weigh in favor of [mother], it's only slightly so because it's such a close call."

As to the sixth factor, the court found that it weighed significantly in father's favor, to the point of "driving" the ultimate custody decision. The court found that, although mother "talk[ed] about" the importance of the children's relationship with father, she was "in court advocating for a radically reduced parenting time schedule that basically would turn [f]ather into an every-other-weekend parent after five years of equal parenting time[,]" whereas father was advocating for continued 50/50 parenting time. It further found that, although mother was "striving to do what she thinks is in the children's best interest," she valued having a "more nuclear family" in her current household in a way that made her "willing to sacrifice the relationship with [f]ather in order" to maintain her nuclear family, and that mother also "sometimes thinks her relationship with the children is more important than that of [f]ather with the children."

Based on its findings, the court decided that "on balance" it was in the children's best interests for father to have legal custody and for the 50/50 parenting plan to remain in place. The court emphasized that legal custody "is just who gets to make certain kind[s] of legal decisions," that it does not indicate "how good a parent someone is or what their involvement should be," and that mother is "a great mom." As the court adjourned the proceedings, mother's counsel interrupted to ask for clarification on the primary caregiver

factor. Describing that factor as a "presumption," mother's counsel asked if it was the court's findings on the sixth factor or "something else" that "rebuts that presumption." The court responded that, "on balance, the other factors outweigh" the statutory preference because that factor "had very little weight." The court similarly stated in its supplemental judgment that, in balancing the factors in ORS 107.137 and deciding to grant legal custody to father, the court had found "that the other factors (ORS 107.137(1) (a, b, c, and f)) outweigh the preference for the primary [caregiver] because that factor had very little weight."[3]

On appeal, mother contends that, although the trial court recognized her as the primary caregiver, it "did not afford mother the statutory preference required by ORS 107.137(1)(e)." In mother's view, she was entitled to "the full strength of the statutory presumption," instead of the "very little weight" that the court gave it. Father responds that the court properly balanced all six statutory factors.

"[W]hether the trial court applied the correct legal standard in making the challenged 'best interests' determination presents a question of law that we review for legal error." *Finney-Chokey and Chokey*, 280 Or App 347, 360, 381 P3d 1015 (2016), *rev den*, 361 Or 100 (2017). "[I]f we determine that the trial court applied the correct legal standard, we review the court's 'best interests' determination for abuse of discretion." *Id.*; *see Forsi v. Hildahl*, 194 Or App 648, 652, 96 P3d 852 (2004), *rev den*, 338 Or 124 (2005) ("The trial court abuses its discretion if it exercises that discretion in a manner that is unjustified by, and clearly against, reason and evidence.").

One of the six factors that a court must consider in making a custody determination is "[t]he preference for the primary caregiver of the child, if the caregiver is deemed

---

[3] Mother contends that the supplemental judgment is "ambiguous" as to whether the trial court viewed the first, second, and third factors—those in ORS 107.137(1)(a), (b), and (c)—as neutral or as favoring father, but that the court's oral ruling resolves the ambiguity and makes clear that it viewed those factors as neutral. *See Wright v. Lutzi*, 326 Or App 29, 33, 530 P3d 517 (2023) ("If a judgment is ambiguous, * * * we may look to the court's oral statements to resolve the ambiguity."). We need not address that issue given our disposition of mother's assignment of error.

fit by the court." ORS 107.137(1)(e). "Generally, the primary caregiver is the party who has provided more care for the child and with whom the child has lived a majority of his or her recent life." *Nice v. Townley*, 248 Or App 616, 622, 274 P3d 227 (2012). "Which party is the primary caregiver may be determined by considering which party has nurtured the child and has taken care of the child's basic needs, for example by feeding the child, nursing the child when he or she is sick, scheduling daycare and doctor's appointments, and spending time disciplining, counseling, and interacting with the child." *Id*.; *see also Wanting and Wanting*, 306 Or App 480, 485, 475 P3d 127 (2020) (concluding that mother "was responsible for meeting the children's needs on a day-to-day basis" and therefore their "primary caregiver").

As this case illustrates, trial courts may find it difficult to designate a primary caregiver in cases involving two very involved parents who share equal parenting time. They are required to do so, however, given the statutory language. *Henretty*, 319 Or App at 348. The court's designation of a "primary" caregiver in such cases should not be "misconstrued as a judgment on the quality of the other parent's parenting or the other parent's devotion to the child," *id*. at 349, and the same can be said of the court's ultimate decision on custody. In both regards, the court's task is not to decide which parent is "better"—it is to weigh factors identified by the legislature as going to the child's best interests with respect to the specific issue of legal custody—and, in close cases, there is little doubt that either parent would be a capable legal custodian.

In this case, mother makes two related but distinct arguments as to how the trial court allegedly failed to give proper consideration to the statutory preference for the primary caregiver. First, and principally, mother argues that the court made what amounts to a factual error—that the court "minimized mother's post-dissolution role as the children's primary [caregiver] as being merely a relic of [the parties'] parenting roles during their marriage" and, *for that reason*, viewed mother as "just barely" the primary caregiver, which in turn caused it to give "very little weight" to the primary caregiver preference. Mother points to various

pieces of evidence in the record that she views as establishing that she does significantly more caregiving than father.

We do not understand the trial court to have given less weight to the primary caregiver factor *because* it viewed mother's additional caregiving as an "artifact" of the parties' pre-dissolution family dynamic. Rather, we understand the "artifact" comment to be merely a passing observation on why mother had remained in the role of primary caregiver even after five years of joint legal custody and 50/50 parenting time.[4] As for mother's claim that "uncontroverted evidence in the record unequivocally supports finding mother to be the children's current primary caregiver, rather than some mere 'artifact' of the marriage," the gist of mother's argument is that the only finding possible on this record is that mother currently does substantially more caregiving than father. We disagree. We are bound by the trial court's express and implied factual findings if there is evidence to support them, *Gilbride v. Smith*, 328 Or App 565, 566, 537 P3d 961 (2023), and, on this record, the court could find, as it did, that the parties provide relatively equal caregiving to the children, with mother only slightly edging out father in that regard.[5]

Mother's second, less developed, argument is that the trial court committed "legal error" by applying "a paper-thin version of the statutory presumption, without any real substance as is clearly required by case law and statute." We

---

[4] Mother argues briefly that the "artifact" comment also could "suggest[] that the trial court did not consider the parties' current caregiving arrangement in identifying the primary caregiver" and instead "relied on the parties' caregiving dynamics during the marriage." In our view, it is readily apparent from the court's findings that it was focused on the children's current circumstances and who is currently the primary caregiver. *See Nice*, 248 Or App at 622 (referring to the child's "recent life" as the relevant period for the primary caregiver preference).

[5] Mother's chief argument for her providing substantially more caregiving than father is that father lets the children spend significant time with their grandparents during his parenting time. There was conflicting evidence as to exactly how much time the children spend with their grandparents, and the trial court did not make findings on that issue. In any event, identifying the primary caregiver requires consideration of both quantitative and qualitative factors—as the trial court recognized in its ruling—and mother has not cited any authority for the proposition that father allowing the children to develop strong ties with other family members during his parenting time necessarily results in his being less of a caregiver.

understand mother to be suggesting that, as a matter of law, the court was required to give a certain amount of weight to the primary caregiver preference and failed to do so. We reject that view.

Although the trial court must designate a primary caregiver and give that parent the "preference" identified in the fifth custody factor, the trial court is required to consider all six factors in ORS 107.137(1) and has discretion in balancing its findings on different factors in deciding what is ultimately in a child's best interests. The court cannot disregard the primary caregiver preference, as it is a mandatory factor and "a significant consideration." *Henretty*, 319 Or App at 350 (internal quotation marks omitted). Indeed, like any of the factors, it may even prove dispositive in a given case, depending on what the court finds on the other factors. But the fact remains that the primary caregiver preference is one of six factors that the court must consider—and it is a preference, not a presumption. *Compare* ORS 107.137(1)(e) (identifying "[t]he preference for the primary caregiver of the child, if the caregiver is deemed fit by the court[,]" as a factor the court must consider), *with* ORS 107.137(2) ("[T]here is a rebuttable presumption that it is not in the best interests and welfare of the child to award sole or joint custody of the child to [a] parent who committed [abuse as defined in ORS 107.705]."); *see also* ORS 107.137(2) (providing that custody "shall not be determined by isolating any one of the relevant factors *** and relying on it to the exclusion of other factors").

How much weight a trial court gives to the primary caregiver preference will depend on the facts of the particular case. *See, e.g.*, *Gilbride*, 328 Or App at 586 (the trial court properly gave heavier weight to the primary caregiver preference where the child had spent 2,076 of the 2,196 nights of her life with her primary caregiver); *Murray and Murray*, 287 Or App 809, 816, 403 P3d 473 (2017) (explaining that the primary caregiver preference was properly given more weight in a case in which the child was "very significantly attached to her mother," who was her primary caregiver, and would likely suffer "serious psychological effects" if placed with her father); *Stevens and Stevens*, 234 Or App

692, 697, 229 P3d 625 (2010) (the primary caregiver preference "weighed slightly in father's favor"); *Ringler and Ringler*, 221 Or App 43, 53, 188 P3d 461 (2008) (weighing the primary caregiver preference more heavily "in light of the young age of the children"); *Robison and Robison*, 124 Or App 479, 482, 863 P2d 478 (1993), *rev den*, 318 Or 350 (1994) (reversing a custody decision where the trial court placed too much weight on the fact that the mother was the primary caregiver).

In this case, we are unpersuaded that the trial court failed to give proper consideration to the primary caregiver preference in making its custody determination. The court did not commit factual error by viewing the record differently from mother with respect to how much caregiving each parent provides. And the court did not commit legal error or abuse its discretion by giving the primary caregiver preference significantly less weight—while still giving it some weight—in a case in which the parties had had joint custody and equal parenting time for five years and mother was found to provide only slightly more caregiving than father.

Affirmed.