114 April 29, 2026 No. 342

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Nikolas Andrew ESTENS,
*Petitioner-Respondent,*

*v.*

Emily Faith WELLS,
*Respondent-Appellant.*

Benton County Circuit Court
22DR00385; A184366

Joan E. Demarest, Judge.

Argued and submitted January 20, 2026.

George W. Kelly argued the cause and filed the briefs for appellant.

John L. Barlow argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, Kamins, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

**PAGÁN, J.**

Mother appeals from a supplemental judgment that modified an existing joint custody award to instead award custody of the child to father. Mother raises two assignments of error. In her first assignment of error, she asserts that the trial court failed to determine a "primary caregiver" and afford them the appropriate preference. In her second assignment of error, she asserts that the trial court erred when it determined that mother had committed abuse by verbally "gaslighting" father. We conclude that the trial court failed to determine a primary caregiver and demonstrate that it afforded them the appropriate preference. As to the second assignment, because the relevant definitions of abuse do not apply to the sort of verbal misconduct alleged here, we conclude that the trial court erred by finding that mother had abused father. We thus reverse and remand.

Unless we exercise our discretion to review *de novo*, which we will exercise "only in exceptional cases," ORAP 5.40(8)(c), we review a trial court's best interest determination in a child custody modification proceeding for abuse of discretion. *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012). Under that standard, we will uphold "the trial court's decision unless it exercises its discretion in a manner that is unjustified by, and clearly against, reason and evidence." *Stancliff and Stancliff*, 320 Or App 369, 371, 513 P3d 20 (2022) (internal quotation marks omitted). A trial court abuses its discretion if it makes a decision that is "guided by the wrong substantive standard" or that is "based on predicate legal conclusions that are erroneous or predicate factual determinations that lack sufficient evidentiary support." *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-18, 376 P3d 960 (2016). Mother requests *de novo* review. We decline to do so because we are unpersuaded that it is merited on this record. We therefore state the facts "consistently with those found by the trial court to the extent that there is evidence to support them." *Nice v. Townley*, 248 Or App 616, 618, 274 P3d 227 (2012) (citing *Turner and Muller*, 237 Or App 192, 196, 238 P3d 1003 (2010), *rev den*, 350 Or 231 (2011)).

The parties divorced in 2022 and were granted joint custody of their only child. In April 2023, father filed a

motion seeking to change custody, alleging that mother was frequently late, uncooperative, and otherwise not the best custodial choice at that time. The case went to trial, during which father, mother, a therapist, and various friends and family testified. Mother and father's text history was entered into evidence. Several issues with mother's parenting were raised, including that she was undermining efforts to potty train the child (who was nearly six years old) and that she was habitually tardy.

Witnesses testified to an incident in which mother took the child on vacation to Hawaii and claimed to father that she had been bumped from her flight, requiring her to return the child late. Mother's boyfriend testified that she had not been bumped from the flight. Mother was also found to be evasive about details of the child's medical care. She denied, but then later admitted, that she had cancelled or skipped medical appointments. The parties also testified about text messages between mother and father where mother had greatly exaggerated the number of times that child had attended a particular extracurricular activity in what appeared to be an attempt to have father help pay for the activity.

In its decision, the trial court explained that one of the factors it was considering was that mother had abused father:

> "Another factor that I may have skipped over is the abuse of one parent by the other. There has been no allegation of abuse. However, I find that Mother's communication with Father and the testimony amounts to a lot of gaslighting. It's a moving target, the truth with Mother's testimony has been a moving target. 'Didn't you say this?' 'Oh, yes, but I meant this.' There's six different explanations for everything. And it is not good for the child and it does constitute abuse, gaslighting is abuse. And so that is another factor that the Court is considering."

The trial court found mother not credible and father credible. The trial court thus modified sole custody to father.

When determining a change of custody under ORS 107.137(1), a trial court "shall give primary consideration to the best interests and welfare of the child." ORS 107.137(1)

then enumerates six factors that go to the best interests and welfare of a child and which a trial court must consider. ORS 107.137(1)(a)-(f). Mother asserts that the trial court erred when it applied two of those factors.

In her first assignment of error, mother asserts that the trial court erred when it failed to designate a primary caregiver and afford the appropriate preference under ORS 107.137(1)(e). "[D]esignating which party is the child's primary caregiver and giving a preference to that party in deciding custody is mandatory under ORS 107.137(1)(e)." *Henretty v. Lewis*, 319 Or App 345, 348, 509 P3d 701 (2022). "[A] trial court legally errs when it fails to determine which parent is entitled to the statutory primary caregiver preference and then account for that preference in its custody determination." *Dickson and Swartz*, 313 Or App 616, 618, 494 P3d 377 (2021); *see also Weaver and Butler*, 342 Or App 229, 236, 575 P3d 1044 (2025) (the weight of the primary caregiver preference need not be the same in all cases and is fact specific). While the trial court here did discuss the primary caregiver factor at length, it fell far short of communicating that it had made a conclusion as to which parent was the primary caregiver. As a result, it did not discuss the custodial preference afforded by the statute and how it was affecting the court's ultimate conclusion on custody. Thus, the trial court erred when it failed to demonstrate that it had determined which parent was the primary caregiver and afforded them the appropriate preference.

In her second assignment of error, mother asserts that the trial court erred when it found that she had committed abuse under ORS 107.137(1)(d) by "gaslighting" father. We agree with mother that the conduct that the trial court described as "gaslighting" is not sufficient to be considered "abuse" under the relevant statutes.

In making custody decisions, courts consider two relevant provisions of ORS 107.137 that use the word "abuse." ORS 107.137(1)(d) requires the court to consider, among other relevant factors,"[t]he abuse of one parent by the other[.]" As relevant here, ORS 107.137(2) goes on to provide:

> "The best interests and welfare of the child in a custody matter may not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors. However, *if a parent has committed abuse as defined in ORS 107.705*, \*\*\* there is a rebuttable presumption that it is not in the best interests and welfare of the child to award sole or joint custody of the child to the parent who committed the abuse."

(emphasis added). Thus, a finding of abuse is highly significant because if a parent's conduct is found to qualify as abuse under ORS 107.705, custody is presumed to not be awarded to the abusive parent.

Abuse is not defined in ORS 107.137(1)(d). However, ORS 107.137(2) relies on the definition in ORS 107.705(1)— which defines abuse for purposes of the Family Abuse Prevention Act (FAPA). Father does not engage with the definition of abuse; mother argues that the definition in ORS 107.705 also applies to ORS 107.137(1)(d). ORS 107.705 provides:

> "(1)   Abuse' means the occurrence of one or more of the following acts between family or household members:
>
> "(a)   Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.
>
> "(b)   Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.
>
> "(c)   Causing another to engage in involuntary sexual relations by force or threat of force."

There is no evidence of any abuse that meets the ORS 107.705(1) definition. Father did not allege that mother engaged in verbal threats that put him in fear of imminent bodily injury. *See Fielder v. Fielder*, 211 Or App 688, 694, 157 P3d 220 (2007) (overt threats, or subtle threats with other accompanying conduct, are sufficient to meet ORS 107.705(b)); *cf. State v. Severson*, 325 Or App 550, 557, 529 P3d 302, *rev den*, 371 Or 332 (2023) (non-imminent threats of harm are constitutionally protected free speech). Nor was there any evidence that mother had ever threatened father with bodily injury.

The only remaining question then is whether the evidence could meet a more general definition of abuse under ORS 107.137(1)(d), assuming there is such a distinction in the law. We have not previously addressed the issue, and the parties have not asked us to make such a determination. We have previously determined that if one parent secures a FAPA order against another parent, indicating abuse under ORS 107.705(1), that is sufficient to prove abuse under ORS 107.137(1)(d). *Ringler and Ringler*, 221 Or App 43, 52, 188 P3d 461 (2008). But while abuse that meets the FAPA definition is sufficient to prove abuse under ORS 107.137(1)(d), the corollary that abuse below the FAPA level may not be considered has not necessarily been settled.

While we acknowledge that there is a tension between the definition of abuse in ORS 107.705(1) and the plain wording of ORS 107.137(1)(d), the parties have not argued to us that resolving the tension would be dispositive. Nor do we need to decide the issue here because regardless of whether ORS 107.137(1)(d) has a separate and lower bar for abuse than ORS 107.705(1), mother's conduct simply was not abuse. For the sake of argument, we assume—but do not conclude—that ORS 107.137(1)(d) has a separate, more general, definition of abuse than ORS 107.705(1).

To the extent that we have allowed verbal abuse to be considered in a prior case, it was accompanied by physical abuse. *See Holcomb and Holcomb*, 132 Or App 498, 507, 888 P2d 1046, *rev den* 321 Or 94 (1995). In *Holcomb*, the father verbally and physically abused the mother, including grabbing and dragging her across the floor, which we held to constitute abuse under ORS 107.137(1)(d). *Id.* That conduct also meets the ORS 107.705(1) definition. *Id.* While the father was also faulted for verbal conduct, such as saying he would "get her" when she tried to apply for a PhD program, it was of a serious and menacing nature that implied a threat of physical violence. *Id.* at 501. At any rate, the verbal conduct did not exist in a vacuum: the father had still physically abused the other parent.

Thus, the question is whether mother's alleged verbal abuse, characterized as "gaslighting" by the trial court, legally rises to the level of "abuse" under ORS 107.137(1)(d).

We conclude that the alleged conduct could not rise to the level of abuse under ORS 107.137(1)(d).

At most, the evidence here could show that mother and father did not communicate in a healthy manner, that mother had been at times dishonest with excuses for her frequent tardiness, and that mother had exaggerated or misrepresented childcare matters to father and the court. But mother did not threaten physical violence, nor were any of the comments of a serious and menacing nature. The method of the comments' delivery, chiefly via text, as opposed to the in-person threat in *Holcomb*, further attenuates any possible abusiveness. That is not to say that no verbal conduct could ever rise to the level of abuse under ORS 107.137(1) (d), but we cannot say that mother's statements or actions identified by father or the court in this case rose to the level of abuse.

Father argues that the court's use of the terms gaslighting and abuse are irrelevant because the trial court was simply trying to articulate that it found mother not credible. We disagree with that reading. The trial court made its finding of abuse in the course of articulating the list of factors it had to consider under ORS 107.137(1). The court acknowledged that it had initially skipped ORS 107.137(1)(d), which addresses abuse, but then returned to it and made a finding that mother had abused father and noted that the court was considering that factor. While the trial court may have also used that evidence to find mother to be not credible (as, again, the trial court *did* explicitly find her to not be credible at the outset of its ruling), it still found that mother had committed abuse by gaslighting father.

Accepting all inferences and credibility determinations in favor of father, no reasonable factfinder could find that mother had abused father within the meaning of ORS 107.705(1) or ORS 107.137(1)(d). The trial court's finding that mother abused father was unsupported by the record, and therefore the court abused its discretion by applying that factor (and potentially its accompanying presumption) against mother. *See Espinoza*, 359 Or at 116 (court abuses its discretion by making a predicate factual finding unsupported by the record). We do not suggest that mother's behavior was

irrelevant. Mother's communication issues and dishonesty can still be considered in awarding custody, but we conclude that they were not legally sufficient to count as abuse.

Father does not directly develop an argument as to how the errors could be harmless. *See Henretty*, 319 Or App at 350 (considering harmlessness after finding error in application of an ORS 107.137(1) factor). Insofar as he addresses it, he argues that the case was not close and that mother's various failings (as he frames them) would lead to the same outcome regardless. That may well be the case, but we cannot say that there is little likelihood that the errors affected the outcome given that the court found that in other ways mother was performing admirably and given that a finding of abuse to the ORS 107.705(1) level creates a serious presumption against a parent. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless if "there little likelihood that the particular error affected the verdict"); ORS 107.137(2). The trial court abused its discretion by improperly applying the ORS 107.137(1) factors against mother, and that error was not harmless. While we agree that there may be more for the court to address, the court can address those issues on remand while appropriately considering the abuse factor and the primary caregiver preference. *See Stancliff and Stancliff*, 320 Or App 369, 513 P3d 20 (2022) (improper application of the ORS 107.137(1) factors required reversing and remanding).

Reversed and remanded.