228 March 26, 2025 No. 257

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Gregory L. CLARK,
*Petitioner-Respondent,*
*and*

E. A. C.,
*Respondent-Appellant,*
*and*

Raymond BARRIENTOS,
*Intervenor-Respondent.*

Klamath County Circuit Court
19DR10773; A178311

Andrea M. Janney, Judge.

Argued and submitted March 4, 2024.

George W. Kelly argued the cause and filed the briefs for appellant.

Daniel S. Margolin argued the cause for respondent Gregory L. Clark. Also on the brief was Margolin Family Law.

No appearance for respondent Raymond Barrientos.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Wife appeals the trial court's dissolution judgment awarding custody of her two children and child support to husband, who is not the children's biological father.[1] Wife assigns error to the court's rulings that husband rebutted the presumption that wife acted in the children's best interest and awarding husband custody and child support. After reviewing the record, we agree with husband that the trial court's findings and conclusions were supported by evidence in the record, and we therefore conclude that the trial court did not err in ruling that the presumption was rebutted and did not abuse its discretion in awarding custody and child support to husband. Accordingly, we affirm.

Wife asks us to review *de novo* the trial court's determinations that husband rebutted the presumption under ORS 109.119 that she acts in the children's best interest and the grant of custody of the two children to husband under ORS 107.137. However, this is not an exceptional case that would justify *de novo* review. ORAP 5.40(8)(c). Thus, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Kleinsasser v. Lopes*, 265 Or App 195, 198, 333 P3d 1239 (2014) (internal quotation marks omitted). If the record was legally sufficient to support the legal determination that the presumption was rebutted, "we then must determine whether the trial court abused its discretion in awarding custody based on the best interest of the child." *Id.*; *see also Nice and Townley*, 248 Or App 616, 620-21, 274 P3d 227 (2012) ("A trial court exercises discretion in making a custody award and is in a better position than an appellate court to weigh the factors that enter into that determination."). We recite the facts consistently with those standards.

Husband and wife were married in 2013 and separated in 2019. The two children at issue in this case were

---

[1] Wife led husband to believe that he was the biological father of the two children (who were born during the marriage) until 2019, when the children were one and three years old. Actual paternity was established late that year, and the children's biological father intervened in this case, but he did not petition for custody.

born in 2016 and 2018. During their time together, wife treated husband as the children's father, and husband did not learn for certain that he was not their biological father until after the separation. In 2019, wife left their home with the children and petitioned the court for a protective order, which was granted. The same judge presided over that contested hearing and the dissolution hearing. Although the court granted the protective order at that first hearing, it was concerned about wife's mental and physical stability at that time and awarded temporary custody to husband, and ultimately awarded custody to husband at the dissolution hearing that is the subject of this appeal. Since the contested hearing regarding wife's petition for a protective order, husband has been acting as primary caregiver, making educational and medical decisions for the children, whereas prior to that ruling, wife had acted as primary caregiver. Both husband and wife are bonded to the children, and the children to them, and both sought sole custody of the children.

Wife experienced substantial trauma in her early life that has affected her mental health. She has been receiving treatment consistently for several years for anxiety, depression, paranoia, and psychosis. In relation to her mental health and history of abuse, wife made several false reports to the Department of Human Services (DHS), claiming that husband abused or neglected the children, all of which were ultimately deemed unfounded.[2] She also gave inconsistent testimony to the trial court regarding claims that husband had abused her. Additionally, multiple witnesses testified that wife spoke poorly of husband in front of the children, and wife testified that she believed that she and the children's biological father should decide how much time husband would get to spend with the children.

Both children in this case have special needs. Wife disagreed with husband's pursuit of early intervention to access speech and social services for the children and opposed immunizing the children. She claimed that husband "disabled them" by confirming that they require special care. The behavioral psychiatrist conducting the

---

[2] For example, wife once reported evidence of sexual abuse to DHS, but when DHS arrived to investigate, it was determined to be a diaper rash.

custody and parenting evaluation, Dr. Charlene Sabin, concluded that husband was more capable of meeting the children's heightened needs. Dr. Sabin observed that the children were better regulated in husband's care and that the younger child, who meets the criteria for being on the autism spectrum, made eye contact with husband but not with wife.

We begin with the court's ruling that husband rebutted the presumption that wife acted in the best interest of the children under ORS 109.119(2)(a), a required conclusion before awarding custody to a non-parent over the parent's objection. ORS 109.119(2)(a) establishes "a presumption that the legal parent acts in the best interest of the child," which is rebuttable by "any person *** who has established emotional ties creating a child-parent relationship." ORS 109.119(1).

The trial court, in a detailed letter opinion, made factual and credibility findings addressing each factor supporting its decision that husband had rebutted that presumption under ORS 109.119(4)(b).[3] The trial court found that husband proved by a preponderance of the evidence that factors (B), (C), (D), and (E) weighed in his favor—that is, (B) that father has recently been the children's primary caretaker, (C) that circumstances detrimental to the children exist if relief is denied; (D) that mother has fostered, encouraged, and consented to the relationship between the children and husband, and (E) that mother has unreasonably denied

---

[3] ORS 109.119(4)(b) provides:

"(4)(b) In deciding whether the presumption described in subsection (2)(a) of this section has been rebutted and whether to award custody, guardianship or other rights over the objection of the legal parent, the court may consider factors including, but not limited to, the following, which may be shown by the evidence:

"(A) The legal parent is unwilling or unable to care adequately for the child;

"(B) The petitioner or intervenor is or recently has been the child's primary caretaker;

"(C) Circumstances detrimental to the child exist if relief is denied;

"(D) The legal parent has fostered, encouraged or consented to the relationship between the child and the petitioner or intervenor; or

"(E) The legal parent has unreasonably denied or limited contact between the child and the petitioner or intervenor."

or limited contact between the children and husband. The court found particularly persuasive the evidence that wife had made several attempts to separate husband from the children through false reports to DHS and inconsistent testimony regarding allegations of abuse by husband. Given that husband had functioned as the children's father for several years, the trial court found that terminating that relationship would "undoubtedly result in [the children's] emotional and psychological harm" and that wife would undoubtedly seek to cut off contact between husband and the children if she were awarded custody. Expert testimony supported the finding that husband acted as the recent primary caregiver when it came to medical and educational decisions, areas where both children needed special attention. In turn, the court questioned wife's ability to address the children's heightened needs. Under a totality of the circumstances, the trial court ultimately concluded that husband had rebutted the presumption that wife acted in the children's best interest. After review, we conclude that the record was sufficient to support the trial court's determination. *See e.g.*, *Husk v. Adelman*, 281 Or App 378, 384, 383 P3d 961 (2016) ("Suffice it to say that, after reviewing the record, we are satisfied that there is evidence to support the court's findings of fact which, when taken together, support the court's ultimate determination."); *cf. Puller and Herndon*, 324 Or App 568, 586, 527 P3d 19 (2023) (exercising *de novo* review and holding that evidence that the biological parent ending contact with grandmother would be traumatic to the child was *alone* insufficient to establish a serious risk of psychological, emotional, or physical harm to a child where grandmother was not a primary caregiver (internal quotation marks omitted)).

Next, wife challenges the award of custody to husband. Applying the factors under ORS 107.137(1),[4] the trial court found that both wife and husband shared emotional

_____

[4] ORS 107.137(1) provides:

"(1) *** In determining the best interest and welfare of the child, the court shall consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

ties with the children and that both demonstrated interest in having custody. It also found that both parents had acted as primary caregivers, but that husband was the more recent primary caregiver and acted as the primary caregiver in areas of heightened need. Without explicitly finding that husband received the preference as the primary caregiver under the statute, the court weighed the factors consistently with an implicit finding that he was, which finds support in the record.

Wife argues on appeal that the facts here are analogous to cases where the court failed to designate a primary caregiver. *See Gomez and Gomez*, 261 Or App 636, 638, 323 P3d 537 (2014) (holding that because the trial court failed to make a determination of primary caregiver, that it then failed to balance the preference against the other factors); *Nice*, 248 Or App at 623 (holding that the record did not support an implicit finding that mother had ceased to be the child's primary caregiver where the trial court did not designate a current primary caregiver). We are not persuaded. In *Gomez*, the trial court conflated multiple factors of the analysis, stating that mother was the primary caregiver "only through her actions in alienating [father]." 261 Or App at 637. Without a clear designation of a primary caregiver in that case and the conflation of factors, we were unable to infer that the trial court had properly considered the preference for the primary caregiver. *Id.* at 628. In *Nice*, the trial court failed to make any designation of current primary caregiver, and we concluded that the record did not support a finding that the primary caregiver had changed, and thus, that the trial court could not have balanced the preference for primary caregiver properly. 248 Or App at 623. In contrast, in this case, the record supports an implicit finding that the trial court considered husband to be the current primary caregiver and gave him the preference in balancing the other factors.

Additionally, the court found that husband's willingness and ability to facilitate and encourage a close and

---

"(e) The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

continuing relationship between the biological parents and the children weighed heavily in favor of granting him custody. That finding is supported in the record by husband's facilitation of a co-parenting schedule, his cooperation with medical and educational decisions, and his testimony, which the trial court found to be reliable, that he had no desire to minimize the children's contact with their biological parents.

Notably, the court found that wife was not a credible witness, considering her "pattern of lying to the parties and the court." Because of wife's lack of credibility, the court found that the underlying restraining order, which the court itself had granted, was not evidence of abuse. Relying on wife's contradictory testimony regarding the claimed abuse and her therapist's testimony that she had never related any abuse by husband, the court concluded that the restraining order was another illegitimate attempt to separate children and husband. That inference, while not the only one possible, is supported by evidence in the record.

Given the evidence in the record to support the findings concerning the custody determination, we conclude that the trial court did not abuse its discretion in awarding custody to husband.

On appeal, wife asks for plain error review of the award of child support payable by wife to husband. To review an error as plain, it "must be an error of law, obvious and not reasonably in dispute." ORAP 5.45. Wife proffers no legal theory as to why this constitutes plain error, and thus, we decline to review it on appeal.

Affirmed.