No. 353 April 23, 2025 11

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Elizabeth A. SKAUG,
*Petitioner-Appellant,*
*and*

Brian Z. SKAUG,
*Respondent-Respondent.*

Deschutes County Circuit Court
20DR01955; A178152

Walter Randolph Miller, Jr., Judge.

Argued and submitted February 2, 2024.

George W. Kelly argued the cause and filed the briefs for appellant.

L. Todd Wilson argued the cause and filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

SHORR, P. J.

Affirmed.

---

   * O'Connor, Judge, *vice* Mooney, Senior Judge.

**SHORR, P. J.**

Mother appeals from a general judgment of dissolution of her marriage with father and from a supplemental judgment containing an award of attorney fees. She raises four assignments of error: (1) the trial court erred in failing to identify which parent was the children's primary caregiver, (2) the trial court erred in forbidding mother's California attorney from providing advice to her Oregon attorney during the dissolution trial, (3) the trial court erred in limiting the testimony from a nurse, and (4) the trial court erred in its award of attorney fees. We affirm.

"[W]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Clark v. E. A. C.*, 339 Or App 228, 230, ___ P3d ___ (2025) (internal quotation marks omitted).

The relevant facts are not in dispute.[1] The parties were married in 2007, and mother filed a petition for dissolution of the marriage in January of 2020. They have two children, who were ages 10 and 13 at the time of the trial. Initially, the court entered a stipulated temporary custody order granting joint legal custody to the parties and parenting time on an alternating week schedule. Then mother filed a request for temporary child and spousal support and father opposed that motion; after a hearing, the court awarded temporary child support and denied mother's request for spousal support. On June 1, mother presented an emergency motion to the court seeking temporary custody of the children and suspending father's access to them based on mother's allegations that their daughter had made disclosures that led mother to believe father had sexually abused her; mother's motion was granted.[2] Approximately a month later, father filed an emergency custody motion. At

---

[1] We provide additional facts as necessary to address each of mother's assignments of error.

[2] The City of Bend Police Department and the Department of Human Services (DHS) became involved in investigating the matter. The City of Bend Police Department and the District Attorney's Office investigated the allegations and closed their investigations with no charges or arrests. DHS determined that the allegations were unfounded.

a hearing on July 8, the court granted father's motion after finding that the children were in immediate danger from mother; father was given temporary custody, and mother was awarded supervised parenting time. Mother eventually made accusations that father had sexually abused both children, and that issue became a focal point throughout the proceedings.[3] At mother's request, the court ordered the parties to participate in a custody and parenting time evaluation by Dr. Wendy Bourg, which the parties did. Bourg ultimately issued a written report and recommended that father be awarded custody of the children.

The remotely conducted trial took place over nine days, starting in January 2022. The court made an oral ruling and instructed father's attorney to prepare the written judgment of dissolution reflecting the court's decision. In its oral ruling, the trial court explained the basis for its decision, including statutory requirements, testimony, and evidence it considered; the court also made certain credibility and bias determinations about witnesses, including about mother.[4] The court awarded custody of the children to father and awarded parenting time to mother in accordance with Bourg's recommendations. Father's attorney prepared a judgment of dissolution, and mother, who was *pro se* at the time, filed an objection to the proposed judgment. The court entered the general judgment of dissolution of marriage on March 3, 2022, and a supplemental judgment for attorney fees on April 15, 2022. Mother filed this appeal.

In her first assignment of error, mother contends that the court erred by failing to identify which parent was the children's primary caregiver and giving that parent a preference in the custody decision; she also asserts that the court erred in awarding custody to father as a result. As we explain, we conclude that mother did not preserve in the trial court the argument that she now makes on appeal.

ORS 107.137(1) states, in part, that "in determining custody of a minor child ***, the court shall give primary

---

[3] By the time of trial, both children had recanted their allegations of abuse.

[4] The court stated that mother had provided "less than credible testimony during trial" and that she was "often evasive and at other times demonstrably false."

consideration to the best interests and welfare of the child" and that "the court shall consider" six relevant factors.[5] Specific to mother's assignment, the fifth factor is the "preference for the primary caregiver of the child, if the caregiver is deemed fit by the court." ORS 107.137(1)(e). As we understand mother's argument, she contends that the court failed to comply with ORS 107.137(1)(e), because, in her view, the court did not explicitly designate either parent as the primary caregiver and then explicitly state that that parent was to be afforded a preference for custody.

When stating its oral ruling on February 7, 2022, in addressing custody of the children, the court began by referencing ORS 107.137(1) and listing the factors it was required to consider in order to determine the best interests and welfare of the children. It then acknowledged ORS 107.137(2), when it stated that "[i]f a parent has committed abuse, there is a rebuttable presumption that it is not in the best interest and welfare of the child to award sole or joint custody of the child to the parent who committed the abuse. Therefore, whether [father] abused [the children] is a threshold question." After explaining its assessment of the evidence and testimony it had heard, the court stated that "the balance of evidence weighs against a conclusion that the abuse [by father] occurred." The court then stated,

> "Having decided the threshold question, the Court is required to conduct and complete the remaining [ORS] 107.137(1) analysis. To that end, the Court adopts the corresponding findings and recommendations of the court-appointed custody and parenting time evaluator Dr. Bourg in her report, beginning on Page 227.

---

[5]  ORS 107.137(1) provides, in part:

"In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a)  The emotional ties between the child and other family members;

"(b)  The interest of the parties in and attitude toward the child;

"(c)  The desirability of continuing an existing relationship;

"(d)  The abuse of one parent by the other;

"(e)  The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)  The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

"There Dr. Bourg walks through the statutory factors, which analysis the Court adopts as its own. As such, father shall have sole custody."

In the section of Bourg's report that addresses ORS 107.137 (1)(e), it contains, in part, the following summary of evidence, analysis, and recommendation:

- "Mother was the children's primary parent for most of their lives"

- "Father has been the children's primary parent since July, 2020"

- "Mother's abuse narrative risks taking Father out of the children's lives"

- "Both parents are fit and proper parents to provide care and make most decisions on behalf of the children"

- "The children are more likely to retain relationships with both parents under Father's custody"

- "Sole Legal Custody to Father[.]"

After the court finished its ruling, it asked father's attorney, the children's attorney, and mother if they had any questions. The children's attorney asked a clarifying question about payment of her fees. Mother, rather than asking any clarifying questions or telling the court that she believed its ruling to be insufficient, told the court that she did not have questions.

Later that month, father's attorney prepared a proposed judgment of dissolution, and mother, who continued to represent herself, filed a 13-page objection to the form of judgment. The proposed judgment contained a finding stating that "[i]n making a custody determination, the Court relied upon ORS 107.137 and the following factors in arriving at a child custody decision" and then listed the six factors contained in ORS 107.137(1). Mother did not object to that language, and it was ultimately included in the general judgment entered by the court on March 3, 2022. The proposed judgment also contained specific findings related to the court's overall finding that father had not abused the children. Mother objected to the wording of one of those specific findings, although not to the finding itself, and the

court did not include that particular specific finding in the judgment it entered.[6]

On appeal, as noted above, mother recognizes that the court adopted Bourg's findings. Mother disputes, however, that those findings contained a designation of a primary parent. Mother did not raise that issue to the trial court—either after the court's oral ruling when given the opportunity to ask questions, nor in her written objections to the proposed judgment prepared by father's attorney. The Oregon Supreme Court has explained that "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000); *see also* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court ***.").

Mother contends that she preserved this assignment of error by asserting in her trial memorandum that she had been the primary caretaker of the children prior to the date when temporary custody was awarded to father. In the alternative, mother contends that because ORS 107.137(1)(e) mandates that the court designate the primary caretaker, she did not need to further preserve the error by way of an after-decision objection. Mother relies on *Dickson and Swartz*, 313 Or App 616, 494 P3d 377 (2021), to support that proposition. In that case, the court had determined that both parents were the primary caregiver; we concluded that the court was not "free to designate both parties as the primary caregiver and decline to account for the preference" and we remanded for the court to account for the mother's entitlement to the primary caregiver preference in its decision. *Id.* at 617-18. We are not persuaded that *Dickson* controls here, where the court adopted the specific finding that "Father has been the children's primary parent since July, 2020." If mother believed that to be an inadequate finding to

---

[6] The proposed language stated that "[t]he Court accepts the testimony and recommendations of the appointed child-custody evaluator in this case, Dr. Wendy Bourg, stated by Dr. Bourg on Page 227 of Respondent's Exhibit 199." Mother objected to that language and requested that the court instead use a direct quote from the court's oral ruling.

meet the statutory designation requirement, she could and should have alerted the trial court. Because mother failed to preserve her argument, we reject it.[7]

We turn to mother's second assignment of error. For a portion of the time this action was pending, mother was represented by an Oregon attorney, Hodgson, and a California-admitted attorney, Davis, who had been granted *pro hac vice* admission to work on the case with mother's Oregon attorney. However, the *pro hac vice* admission had expired, and the trial court denied a motion to renew it after father objected.[8] Therefore, at the beginning of the trial, mother was represented by Hodgson. On the third day of trial, father's attorney raised an issue with the court—it was his suspicion that mother's attorney was conferring with Davis contemporaneously with the proceedings; he asserted that that was improper.

A discussion among counsel and the court took place. Hodgson explained that he was being advised by Davis, who was in another room in his building, because he did not "know much about litigating" and that he did not "understand litigating"; Hodgson also eventually told the court that he and Davis were communicating via headset while court was in session. Ultimately, relying in part on Rule of Professional Conduct (RPC) 5.5(c)(2),[9] husband's

___

[7] In any event, even if mother had preserved this assignment, we would affirm the trial court's decision. This case has similarities to our recent decision in *Clark*, 339 Or App 228. In that case, we concluded that the record supported an implicit finding that the trial court considered the husband to be the current primary caregiver and gave him the preference in balancing the other factors. *Id.* at 234. That, along with other evidence in the record, supported the court's custody determination and we concluded that the court did not abuse its discretion in awarding custody to the husband. *Id.* at 235. Here, the record would also support a finding that father was the current primary caregiver and was given the preference; that finding, along with other evidence in the record, would support the trial court's custody determination.

[8] The trial court denied Davis's *pro hac vice* renewal motion because the associated Oregon attorney was not meaningfully participating in the matter as required by UTCR 3.170(1)(c) and because it was "not in the best interests of the parties or the Court to continue the pro hac vice status," in part, due to the fact that there had been numerous issues with court filings that had violated local court rules and the Uniform Trial Court Rules as well as a violation of a court order. The denial of the *pro hac vice* renewal is not at issue on appeal.

[9] RPC 5.5(c)(2) provides that

"[a] lawyer admitted in another jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that *** are in or reasonably related to a pending

attorney asked the court to preclude Hodgson and Davis from conferring with each other "while court is in session, whether that means talking to him on an earpiece, telling him what to object to or giving feedback about arguments"; he specified that he did not object to them conferring as much as they wanted to when court was not in session. The court stated that

> "having the lawyer who has not had his status renewed talking through a headset to the earpiece of the lawyer who's sitting effectively at counsel's table and having that former lawyer tell the current lawyer what to say during examinations is of great concern to the Court and does not appear to be consistent with the Court's prior ruling not renewing [Davis's] application for *pro hac vice* status.
>
> "I have concerns that that constitutes legal services and is certainly more than performing the role of a paralegal. A paralegal would never use an earpiece to talk to the current lawyer sitting at the table and tell that lawyer what to say.
>
> "* * * * *
>
> "And so I'm very concerned about that. The motion is granted in that Mr. Davis is precluded from communicating with Mr. Hodgson while court is in session. * * *"

After that ruling, the court took a recess so that the attorneys could confer with their respective clients. Hodgson and mother conveyed that mother wanted to continue with the trial and that Hodgson would be representing her. However, the following day, mother told the court that she was releasing Hodgson as her "active attorney on this case" and that she would represent herself but consult with him on the law; mother did not want a continuance.

    On appeal, mother asserts that the trial court erred in forbidding her California-admitted attorney to provide advice to her Oregon attorney during the trial. She argues that the services Davis was providing—assisting an Oregon lawyer in a proceeding—were services that RPC 5.5 permits. Mother also contends that the alleged error was prejudicial

---

or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized[.]"

because her Oregon attorney needed assistance with litigation, and as a consequence of the ruling, two-thirds of the trial was affected. In response, husband argues that the trial court did not err when it barred Davis from coaching and directing Hodgson via earpiece during examination of witnesses.

When a constitutional right is not implicated, "we review a trial court's exercise of control over courtroom proceedings for abuse of discretion." *State v. Rockafellor*, 326 Or App 753, 757, 533 P3d 808 (2023).[10] We "consider whether the trial court's decision was within the range of legally correct discretionary choices and produced a legally correct outcome. If so, the trial court did not abuse its discretion." *Id.* at 758 (citation omitted). As noted above, mother asserts that the court erred because RPC 5.5 permitted Davis to provide the services he was providing—legal services to an Oregon lawyer who actively participates in the matter; however, mother does not provide any argument as to why, in her view, the court was *required* to allow Davis to provide contemporaneous and surreptitious instructions to Hodgson through an earpiece while court was in session and in possible violation of the trial court's previous order. Under the circumstances here, where Davis's motion for renewal of the *pro hac vice* admission had been denied and the trial court found that Davis was essentially acting as mother's trial counsel by using Hodgson as his conduit, we conclude that the court did not abuse its discretion when it ruled that Davis and Hodgson were not permitted to communicate while court was in session. We reject mother's second assignment of error.

In mother's third assignment of error, she contends that the trial court erred in limiting the testimony of her witness, Shirley Fitzgerald, who is a registered nurse and works as an independent forensic nurse examiner. Father responds that the trial court properly limited Fitzgerald's testimony so that it was within the scope of her qualification as an expert. We agree with father.

Mother called Fitzgerald as an expert witness. Mother, who was representing herself at that point in the trial, had some difficulty in qualifying Fitzgerald as an

---

[10] Mother does not raise a constitutional argument.

expert. Eventually, the court stated that "the witness has satisfied me that she can be qualified as an expert in reviewing SANE [(sexual assault nurse evaluation)] records * * * she can continue with her testimony within that scope." The only SANE records that Fitzgerald reviewed were records for the two children from an evaluation on July 24, 2020.

On appeal, mother contends that Fitzgerald "should have been allowed to testify that the images included in the July SANE examinations were consistent with revelations made by the children at the KIDS Center."[11] We note that mother does not raise any issues regarding the trial court's qualification of Fitzgerald. Rather, mother appears to argue that she attempted to elicit opinion testimony from Fitzgerald that was within the scope of that qualification, and that the court excluded that testimony in error. Having reviewed the record, it is apparent that mother sought testimony from Fitzgerald that was outside of the limited scope of her expert qualification or that relied on information that was outside of the scope. Therefore, we conclude that the court did not err in limiting Fitzgerald's testimony as asserted on appeal.

Mother's fourth assignment of error regarding attorney fees is contingent upon her other assignments of error. Given our disposition of the other assignments, we need not reach it.

Affirmed.

---

[11] The children participated in forensic interviews at the KIDS Center on June 15, 2020. At one point during Fitzgerald's testimony, the trial court clarified,

"I want to be very clear with you. She's made reference to * * * KIDS Center interviews, et cetera.

"She [is] not an expert in reviewing that, none of it. I didn't make her an expert in reviewing any of those things. She is a[n] expert for a very limited—with a limited scope.

"So if your question seeks to get an opinion from Fitzgerald, Nurse Fitzgerald involving * * * topics that she's not been allowed to opine on because she's not been qualified as an expert to opinion on them, she's not going to be giving it."